**E. I. du PONT de NEMOURS AND COMPANY, Appellant,**

v.

**Bruce McCAIN et al., Appellees.**

**No. 26320.**

United States Court of Appeals Fifth Circuit.

June 16, 1969.

William L. Kerr, Theodore M. Kerr, Kerr, Fitz-Gerald & Kerr, Midland, Tex., Walter D. Ford, Edward W. Schall, Harry Fairchild, Wilmington, Del., Daniel M. Gribbon, Washington, D. C., for appellant; Covington & Burling, Washington, D. C., of counsel.

Eldon B. Mahon, Walter S. Pope, Jr., Abilene, Tex., for appellees; Willoughby, Pope, Dickenson, Batjer & Glandon, Abilene, Tex., of counsel.

Before GOLDBERG and MORGAN, Circuit Judges, and LIEB, District Judge.

LIEB, District Judge.

This products liability and negligence action was brought against duPont by persons who were injured and whose home was destroyed when an explosion occurred while Charles McCain was applying a water repellent compound, called "X–33", in the basement of his parents' home. The compound was manufactured by Wilmington Chemical Corporation (WCC). It contained 98% Shell Sol B, a petroleum distillate supplied by Shell Oil Company, and 2% "Tyzor HS", a trade-marked organic titanate supplied by duPont.

Charles McCain bought two cans of X–33 at an auction sale. As he was applying the compound an explosion occurred which resulted in severe injuries to him and, to a lesser extent, his mother. Suit was brought in Federal Court against WCC, Shell and duPont.

Prior to trial, Shell settled with the McCains for $31,000 and received in return a covenant not to sue. DuPont did not attempt to obtain indemnity or contribution from Shell by way of a third party action for any damages which the jury might assess against duPont. WCC filed no answer to the complaint because it was already insolvent and extinct. However, its president and sole stockholder, Joseph Klehman, attended the trial; he testified and was permitted to examine and cross-examine witnesses.

The issue at the trial was solely as to duPont's liability. Following testimony and instructions, twelve specific questions were asked of the jury, all of which were answered favorably for the McCains. A judgment of $99,652.89, being the full amount of damages less the $31,000 Shell settlement, was entered for the McCains. DuPont does not quarrel with the amount of compensatory damages assessed by the jury. It does contest the liability aspect and the trial court's computation in fixing the judgment.

In 1960, Joseph Klehman contacted duPont representatives about manufacturing a water repellent. DuPont proposed that Klehman use its patented repellent, "Tyzor." He was given technical advice by duPont on the proper use of Tyzor. It was suggested to Klehman that the compound should contain 98% solvent. DuPont contacted Shell, which recommended its "Sol B" as a solvent. DuPont conducted tests of the compound with "Sol B" in its labs, but, admittedly, such tests were not directed to factors of safety, flash point, and flammability.

DuPont was aware that the compound as finally formulated would be sold to the general public. It knew that WCC, when organized, would be a "thin corporation." It reserved the right to approve the product label to protect its trade-mark. Its policy was to permit the use of its name on labels so as to promote sales of the product. Yet it acknowledges that it made no effort to determine whether the warnings on the label were adequate. DuPont also approved advertising material which contained the statement that the product was produced "in strict accordance with duPont's exacting quality control standards."

There exists a controversy as to the degree of prominence which the word "duPont" enjoyed on the label of the X–33 can. It is clear, however, that the word duPont is easily observed by the casual viewer. The label contained the statement, "Formulated From DuPont Tyzor® Organic Titanate." Standing boldly in large black letters against a clear yellow background at the center of the container is the word "DU PONT". That word captures one's eyes initially before further examination is permitted. Above "DU PONT" on the can there is printed "X–33" in print much larger than that of the former. However, it has been cleverly blended into a beige background which has the effect of reducing its attractiveness. At the lowest portion of the can, in letters which are

larger than "DU PONT", but smaller than "X–33", are the words "WILMINGTON CHEMICAL CORPORATION." Once again the beige background detracts from the distinct wording. Additionally, the last mentioned phrase is printed so as to almost surround the can. From any angle the observer can see but one of the three words; the word "CHEMICAL" lies directly below the word "DU PONT".

The flash point of duPont's Tyzor is nearly 500 degrees Fahrenheit, which practically speaking means it will not burn. The product X–33 had a flash point of minus 78 degrees Fahrenheit, which is more explosive than gasoline. It is undisputed, and the trial judge so instructed the jury, that the Tyzor was "completely safe." The explosion was not caused by duPont's ingredient in the water repellent compound.

The McCains' recovery was grounded on two theories of liability: negligence and strict liability in tort.

### Strict Liability in Tort

The McCains maintained below that the X–33 label, which was approved by duPont and contained its name, misled and deceived the general public, thereby providing the basis for holding duPont strictly liable. It is argued that duPont lent and permitted WCC to use its name in the manner it did for the sole purpose of selling the product by leading the public to believe that the end product was duPont's. The McCains contend that strict liability should be imposed, under the circumstances, even though duPont manufactured only a harmless part of the end product.

DuPont counters by arguing that Texas law does not apply strict liability to the manufacturer of a "perfectly safe" component part; that such application would require manufacturers to impose unbearable burdens on their customers. In addition, it is insisted that the duPont statement on the label was a truthful statement, which it could not legally have prevented WCC from using, and which therefore cannot form the basis for holding duPont strictly liable. DuPont insists that manufacturers should not be held responsible to consumers who misconstrue the appearance of their names and trademarks on their labels.[1]

### Negligence

DuPont maintains that it had no responsibility to test WCC's end product or to insure the adequacy of the warnings on the label.

DuPont also objects that the trial court should have ruled as a matter of law that the independent, intervening negligent acts and omissions of WCC and Shell were the proximate cause of Charles McCain's injuries, and thereby insulated duPont from liability. The McCains reply that the question of independent, intervening cause is one for the

---

1. Much as we are tempted, we deem it inappropriate on this occasion to discuss strict liability in tort as it pertains to the manufacturer of a perfectly harmless component part of the end product of another producer. Our disposition of this case does not necessitate such a discussion since the jury's verdict for the plaintiff is sustainable on the negligence count alone.

 As an assist to the Texas Bar, however, we point out that the plaintiffs' legal basis for urging us to hold duPont strictly liable is Restatement (Second) of Torts § 400 (1965), which states as follows:

§ 400. Selling as Own Product Chattel Made by Another.

One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer.

 Although Section 400 has been discussed by Texas Court, S. Blickman, Inc. v. Chilton, 114 S.W.2d 646 (Tex.Civ.App. 1938) ; and by this Court, Ford Motor Co. v. Mathis, 322 F.2d 267, 3 A.L.R.3d 1002 (5th Cir. 1963), it has never been examined in the context to which we advert. We decline the invitation now since we are not presented with a delemma similar to that which faced the Court in Stool v. J. C. Penney Co., 404 F.2d 562, 563 (5th Cir. 1968).

jury and that it was properly submitted in the District Court's instructions.

*Amount of Judgment Against DuPont*

DuPont argues that the law of Texas requires that a joint tortfeasor's liability for an injured party's damages should be limited to one-half the amount of the jury award. According to duPont, Shell, which settled before trial, should have been held responsible for one-half the total damages, and judgment should have been entered against duPont for the remainder.

## DISCUSSION

The jury's verdict finding duPont guilty of negligence was grounded on three possible negligent acts or omissions: (1) failure to test the end product; (2) permitting its name to be used on the label without determining the safety of the end product; and (3) permitting its name to be used on the label without determining whether the warning was adequate. DuPont maintains that the law imposes no duty on it to do any of these acts.

 Whether the law requires an alleged tortfeasor to do or refrain from doing an act depends on the amalgam of facts of the case. Did the McCains have a legally protected interest, the violation of which would render duPont, the manufacturer of a harmless component part of the finished product liable? The test is foreseeability and its application depends upon all the relevant facts. Palsgraf v. Long Island R. R., 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253 (1928); City of Dallas v. Maxwell, 248 S.W. 667, 27 A.L.R. 927 (Tex.Comm.App.1923).

The jury has determined as a factual matter that that which was on the label was printed so as to lead the consumer public to believe that the product was duPont's.

DuPont argues that it could not have legally prevented WCC from printing the truthful statement that X–33 was formulated from duPont's "Tyzor". If, however, the truthful statement was also deceptive, then duPont could have legally prevented WCC from printing it in the fashion it did. The law is as Justice Holmes said,

> When the mark is used in a way that does not deceive the public, we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo.

Prestonettes, Inc. v. Coty, 264 U.S. 359, 368, 44 S.Ct. 350, 351, 68 L.Ed. 731 (1924). However, the Justice cautions in the following paragraph,

> If the name "Coty" were allowed to be printed in different letters from the rest of the inscription * * *, a casual purchaser might look no further and might be deceived. But when it in no way stands out from the statement of facts that unquestionably the defendant has a right to communicate in some form, we see no reason why it should not be used collaterally, not to indicate the goods, but to say that the trademarked product is a constituent in the article now offered as new and changed.

264 U.S. 368–369, 44 S.Ct. 351.

Following the holding of *Prestonettes*, the trial court was justified in relying on the jury to decide whether a "casual purchaser" might be deceived into believing that duPont was the manufacturer of the end product. The jury said that he might be so deceived.

 An examination of the evidence presented by all the parties reveals that duPont assumed to itself a role much more active than it would now have this Court believe. It counseled and advised Klehman concerning the proper formula to be used in its compound; it contacted Shell, which recommended to Klehman the use of the highly flammable Shell Sol B. It conducted quality control tests on the X–33. It retained the right to make the ultimate decision as to the label on the product. DuPont dictated the appropriate advertising methods. It acknowledged that its name on the label was permitted in the fashion it was so as to advance the sale of X–33. Under

the facts as outlined briefly, it appears that duPont should have anticipated that a reasonably cautious purchaser of the finished product could have been injured as a result of its failure to (1) test the product, (2) determine the product's safety and (3) determine the adequacy of the label warning.

## II.

■ DuPont next attacks the form of the trial court's special questions, numbers 8 and 9, to the jury on the issues of negligence and contributory negligence.[2] It is argued that the court precluded the jury from finding no negligence on the part of duPont, and that it urged the jury to ignore the roles of WCC and Shell in the case. It is true that the form of the special verdict may not be ideal, but it is not known how duPont has been prejudiced as a result. The questions presented are unmistakable, and the jury replied logically. Had the jury elected to make the alternative answer to each question, duPont would have been vindicated. All this is obvious from reading the verdict form.

## III.

DuPont also takes the position that the trial court should have ruled as a matter of law that the acts and omissions of WCC and Shell were the proximate cause of the McCains' damages,

and that duPont bore no responsibility for the injuries. It agrees that the defense of independent, intervening cause is usually a matter for the jury to decide, but argues in this case that reasonable men could not differ on the issue of duPont's responsibility.

Alternatively, duPont objects that the trial court should have instructed the jury that intervening cause is an "affirmative defense" to plaintiffs' negligence claim. Dupont argues that the jury should have been asked to make a special finding on its intervening cause defense.

The Supreme Court of Texas, in Dallas Ry. & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379, 383 (1952), has said:

> The theory of new and independent cause is not an affirmative defense; it is but an element to be considered by the jury in determining the existence or non-existence of proximate cause.

The Court pointed out that the issue of independent cause should not be submitted separately to the jury.

■ The trial court's definition of proximate cause included the element of "new and independent cause" and the latter phrase was defined properly for the jury.[3] The Court's charge to the

---

2. QUESTION NO. 8:
 Do you find from [sic] the plaintiffs or the defendant, duPont, on the plaintiffs' theory that the personal injuries and property damages in question were proximately caused by the negligence of the defendant, duPont?
 ( ) We find for the plaintiffs on this theory.
 ( ) We find for the defendant, duPont, on this theory.
 QUESTION NO. 9:
 Do you find for the plaintiffs or the defendant, duPont, on the theory that the personal injuries and property damage [sic] in question were proximately caused by the negligence of Charles McCain?
 ( ) We find for the plaintiffs on this theory.
 ( ) We find for the defendant, duPont, on this theory.

3. * * * * * * * *
 "Proximate cause" is that cause which in a natural and continuous sequence, unbroken by any new and independent cause, produces an event and without which that event would not have occurred. The test of proximate cause is reasonable forseeableness. That means that the circumstances must have been such that an ordinarily prudent person in the place of the person sought to be charged with the wrong, would have reasonably foreseen that some injury or damage of some kind (not necessarily the injury or damage alleged) would in reasonable probability result from his wrongful act.
 As was mentioned to you a while ago, the defendant duPont says that the acts of Wilmington Chemical Corporation and Shell Oil Company were a new and independent cause which broke the

jury does not support duPont's contention that independent cause was ignored by the Court in discussing the plaintiffs' claim of negligence. Likewise, the facts, as reviewed above, indicate that the trial court was not in error when it declined to rule that independent, intervening acts and omissions of WCC and Shell isolated duPont from liability.

### IV.

If the jury's verdict is upheld by the Court, duPont argues that judgment against it should be limited to one-half of the McCains' total damages. It faults the trial court for reducing the jury's verdict by $31,000—the Shell settlement—rather than by one-half. In support of its position, duPont cites Palestine Contractors, Inc. v. Perkins, 386 S.W.2d 764 (Tex.1964).

As in this case, the injured party prior to trial gave one of the alleged tortfeasors a convenant not to sue. However, the defendant company brought in the settling party by means of a third party action for indemnity or contribution. There was a specific finding of negligence with respect to the settling party. The Supreme Court limited the judgment against the defendant to one-half the total award. In its opinion, at 386 S.W.2d 766-767, the Court explicitly recognized a distinction when the defendant makes no prayer for contribution from the settling party. Skyline Cab Co. v. Bradley, 325 S.W.2d 176 (Tex.Civ.App.1959). That distinction appears to be highly relevant to the instant case.

■ The most current cases in Texas have limited *Palestine Contractors* to its special facts. Petco Corp. v. Plummer, 392 S.W.2d 163, 166-167 (Tex.Civ.App.1965); Connell v. Rosales,

419 S.W.2d 673, 678-680 (Tex.Civ.App. 1967). As a consequence it appears that the following factors must exist before judgment against duPont could be limited to one-half:

(a) the settling tortfeasor must be a party against whom indemnity or contribution is sought at the time of trial; and

(b) there must be a finding that the settling tortfeasor was negligent.

Both factors are absent from this case.

Affirmed.

causal connection and destroyed any possibility of a proximae cause. By the term "new and independent cause" is meant that an act or omission of a separate or independent agent which the defendant did not control, destroyed the causal connection between the wrongful act or omission of the defendant and the

injuries and damages complained of, and thereby becomes within itself the immediate cause of an injury or damages. The act or independent agency must have been one which could not have been reasonably foreseen by the defendant in the exercise of ordinary care.