Raymond LEGER, Plaintiff-Appellee, Cross-Appellant,

v.

DRILLING WELL CONTROL, INC. et al., Defendants,

Dresser Offshore Services, Inc., Defendant-Appellant, Cross-Appellee.

No. 77–1310.

United States Court of Appeals, Fifth Circuit.

April 10, 1979.

Richard E. Gerard, Jr., Lake Charles, La., for defendant-appellant, Dresser Offshore Services, Inc.

Bob F. Wright, Lafayette, La., Richard Putnam, Jr., Abbeville, La., for Raymond Leger.

John G. Torian, II, Lafayette, La., for Drilling Well Control Inc. et al.

Before GEWIN, HILL and FAY, Circuit Judges.

FAY, Circuit Judge:

Appellee, Raymond Leger, was injured while working aboard a barge owned by appellant Dresser Offshore Services, Inc. ["Dresser"]. At the time of the accident, Leger was employed by Drilling Well Control, Inc. ["DWC"], a service company which specialized in the control of high pressure oil wells. Dresser was using the barge in a workover operation on an offshore oil well owned by Continental Oil Company ["Continental"]. DWC was called to the well site by Continental to correct technical difficulties which Continental and Dresser were encountering in the workover operation. On March 21, 1969, Leger and two other DWC employees arrived by workboat at the barge. They brought with them a pipe and bottle rack to be used in the workover operation. After the pipe and bottle rack were unloaded from the workboat, Leger first asked John Bullard, the senior Continental representative aboard the vessel, for the use of the barge's crane in helping to unload the pipe from the bottle rack. Bullard refused, indicating that the crane was too busy at that time. Leger then asked Hilliard Guidry, a Dresser employee, for the use of the crane. Guidry also refused. Leger then began to unload the pipe by hand, and he sustained the injury which is the subject of this suit.

Leger filed suit against his employer, DWC, under the Jones Act and general maritime law and against Continental and Dresser under general maritime law. On the morning of the trial Leger settled his claims against DWC and Continental for a total of $182,331.05. The Travelers Insurance Company, which provided liability insurance for DWC and Continental, settled Leger's claim against DWC for $82,331.05 and Leger's claim against Continental for $100,000.00. Dresser's only issue on appeal is the effect of this settlement on the amount Leger was entitled to recover from Dresser.[1]

Leger's case against Dresser was tried twice. At the first trial, the jury found Leger's damages to be $284,090.00. The trial court and Dresser's counsel then learned that the release and indemnity agreement between Leger and Travelers Insurance Company provided that Travelers was to receive one-half of any funds actually collected by Leger from Dresser, whether the funds were collected as a result of judgment or settlement. The trial court granted Dresser's motion for a new trial on the ground that the jury should have been informed that DWC and Continental were originally defendants, that Leger had settled his claims against them, and that Travelers was to receive one-half of all sums received by Leger from Dresser. The court considered it necessary that the jury be aware of the continuing interest in the law suit of the various witnesses from DWC and Continental.

The issue at the new trial was limited to liability, since the additional information to

---

1. Dresser's other assignment of error was withdrawn at oral argument.

be submitted to the jury would have no bearing on the amount of damages. Thus, Leger's damages remained fixed at $284,090.00. At the new trial the jury found the negligence of the parties as follows: Dresser—45%; Continental—20%; DWC—0%; and Leger—35% contributory negligence. Dresser filed a motion to alter the judgment, requesting that the court afford Dresser a credit against the judgment for the full dollar amount of the settlement ($182,331.05) between Leger, DWC, and Continental. The motion was denied, and the court, in accord with rules hereafter discussed, entered judgment against Dresser for $127,840.00. That amount reflects the total damages of $284,090.00 reduced by $99,430.17 representing the 35% contributory negligence of the plaintiff and by $56,817.24 representing the 20% negligence attributed to Continental. No reduction in the judgment was made for DWC's settlement since DWC was found not to be negligent. To put it another way, Dresser was charged by the judgment to pay only the portion of the total damages proportionate to its percentage of negligence (45% of $284,090.00).

The rules employed by Judge Hunter to determine the amount of credit against the judgment were derived from the following principles:

(1) Where the concurrent fault of two or more persons combine to produce injury, the parties at fault are joint tortfeasors and, as such, are liable to the injured plaintiff.[2]

(2) The Federal Rules of Civil Procedure have liberalized joinder[3] and impleader rules in maritime claims to facilitate the presence of all interested parties in one action. All potential joint tortfeasors may be made third party defendants, pursuant to Rule 14(c). Application of the Rule in this manner is the only possible interpretation of it consistent with its purpose and intent.

(3) Where there are two or more defendants (alleged joint tortfeasors), and the plaintiff settles with and grants a release as to one or more of them, reserving his rights against the remaining, the settling defendants are relieved of any further liability to the plaintiff.[4]

(4) When two or more parties have contributed by their fault to cause injury to another, the liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault.[5]

(5) A tortfeasor seeking to assert a reduction by the degree of fault of alleged joint tortfeasors must prove by a preponderance of the evidence that the settling defendant was, in fact, at fault.[6]

(6) A settling party's negligence is considered only when he has been made a party to the suit. In such a case, the judgment awarded to the claimant against the nonsettling defendant is credited with the dollar amount represented by the proportion of negligence, if any, attributed to the settling parties.

*Leger v. Drilling Well Control, Inc.,* 69 F.R.D. 358, 362–63 (W.D.La.1975) (original footnotes omitted). While Dresser concedes the validity of the first five *Leger* principles, it argues with respect to the sixth that "where two of the original defendants have settled with the plaintiff for more than would have been their pro rata share of the total damages awarded to the plaintiff, the application of the doctrine of comparative fault constitutes an abuse of discretion in

**2.** *See Cooper Stevedoring Co. v. Kopke,* 417 U.S. 106, 110, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974).

**3.** We note, although we do not decide, that *potential joint tortfeasors who have settled* may be joined under Rule 19 in order to assess pro rata damages.

**4.** *See Luke v. Signal Oil & Gas Co.,* 523 F.2d 1190 (5th Cir. 1975).

**5.** *See Harrison v. Flota Mercante Grancolombiana, S.A.,* 577 F.2d 968, 982 (5th Cir. 1978). `Cf. United States v. Reliable Transfer Co.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975) (apportioning liability between plaintiff and defendant according to relative degrees of fault).

**6.** This follows as a natural corollary to rule six.

that it allows double recovery in favor of the plaintiff." We do not agree.

■ Judge Hunter's able opinion is in full accord with recent Supreme Court decisions in this area. The Supreme Court clarified in *Cooper Stevedoring Co. v. Kopke,* 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974) that there no longer exists a blanket prohibition against contribution in non-collision cases. The Court left open the question of whether contribution should be "based on an equal division of damages or should be relatively apportioned in accordance with the degree of fault of the parties." *Id.* at 108 n.3, 94 S.Ct. at 2176 n.3. In *United States v. Reliable Transfer Co.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), the Court seems to have answered the question by holding that, where the plaintiff and the defendant in a maritime collision case are both partly responsible for an accident, "liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault . . . ." *Id.* at 411, 95 S.Ct. at 1716. The Court reasoned that it is unfair to allocate damages equally where fault was not equal. In addition, "[a] rule that divides damages by degree of fault would seem better designed to induce care . . because it imposes the strongest deterrent upon the wrongful behavior that is most likely to cause harm." *Id.* at 405 n.11, 95 S.Ct. at 1713 n.11. The reasoning of *Relia-ble Transfer* loses none of its cogency in the context of a non-collision personal injury case. *See Harrison v. Flota Mercante Grancolombiana, S.A.,* 577 F.2d 968, 982 (5th Cir. 1978); *Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31, 44 (3d Cir. 1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643. Likewise, we can see no basis for rejecting the *Reliable Transfer* reasoning simply because one or more of the potential defendants has settled with the injured party. Thus, *Leger* represents a sound and logical application of the Supreme Court's decisions in *Cooper* and *Reliable Transfer.*

■ Intervening cases justify our departure from prior case law in this area. *See Billiot v. Stewart Seacraft Inc.,* 382 F.2d 662 (5th Cir. 1967); *Loffland Brothers Co. v. Huckabee,* 373 F.2d 528 (5th Cir. 1967). The prior rule, as enunciated in *Billiot* and *Loffland,* provided that, where one jointly negligent maritime defendant had settled before trial, the injured party could recover from the remaining defendant an amount determined by reducing the total damages by the amount of the settlement. This method was designed to prevent the plaintiff from receiving a double recovery for his injuries. In our view, the *Leger* rules accommodate the interests of fairness and deterrence without sacrificing the policy against double recovery upon which *Billiot* and *Loffland* were founded.[7]

---

**7.** It should be noted that this case does not involve those decisions dealing with the question of whether a vessel sued pursuant to section 905(b) of the Longshoremen's and Harbor Workers' Compensation Act, [LHWCA] 33 U.S.C. §§ 901, *et seq.,* may reduce its liability to an injured longshoreman by the proportion of negligence attributable to the stevedoring company employing the longshoreman. *See, e. g., Samuels v. Empresa Lineas Maritimas Argentinas,* 573 F.2d 884 (5th Cir. 1978); *Shellman v. United States Lines, Inc.,* 528 F.2d 675 (9th Cir. 1975) *cert. denied,* 425 U.S. 936, 96 S.Ct. 1668, 48 L.Ed.2d 177 (1976). *Contra, Edmonds v. Compagnie Generale Transatlantique,* 558 F.2d 186 (1977), *modified en banc,* 577 F.2d 1153 (4th Cir. 1978). The basis for the rule not allowing vessels to assert such a reduction is to prevent the vessel from shifting to the stevedoring company its liability for its failure to perform its statutory obligation to maintain a safe ship. In this case, however, DWC had been paying LHWCA benefits before the settlement. In its answer to Leger's complaint, DWC asserted that Leger's exclusive remedies against it were pursuant to the sections 904 and 905 of the LHWCA. DWC recognized that it was potentially liable to Leger under the Jones Act or the general maritime law. By settling, DWC was avoiding the risk that the trial court would so hold. Thus, a reduction in Dresser's liability by DWC's proportionate negligence would not upset the balance of rights and duties under the LHWCA since the DWC's settlement with Leger was apparently intended to cover the contingency that Leger would be found *not* to be an employee for purposes of the LHWCA and therefore not limited to section 904 remedies against it. Moreover, since DWC has already settled with Leger, no liability or responsibility shifting can result from allowing the credit here. Finally, since Leger has received LHWCA benefits from and a set-

In this case, Leger did not receive a double recovery for his injuries. In accord with its ground rules, the trial court rendered judgment against Dresser for $127,840.00, representing Dresser's percentage of negligence (45%) multiplied by Leger's damages as found by the jury ($284,090.00).[8] Although Leger nominally received $310,171.05 by virtue of the settlement and the judgment, we do not consider this a double recovery. Leger merely obtained a favorable settlement. By releasing DWC and Continental in exchange for $182,331.05, Leger "sold" or relinquished any claims which he had against them. *See Rose v. Associated Anesthesiologists,* 163 U.S.App. D.C. 246, 501 F.2d 806 (1974) (characterizing a settlement as a pro rata sale of the plaintiff's claim). At the time of the settlement negotiations, no one knew how a jury would apportion fault or in what amount it would find damages. By settling with Continental and DWC, Leger took the risk that he was foregoing a larger amount possibly to be obtained at trial. Likewise, Continental and DWC must have considered the amount for which they settled to be less than their exposure at trial would have been. Dresser made a different assessment. By going to trial it took the risk that the jury would find substantial damages and a high degree of negligence on its part. With the benefit of hindsight it is clear that only Leger correctly charted his course. However, according to the rules which we adopt today, Leger could have lost a great deal. For example, if he had settled with DWC and Continental for $182,331.05 and if the jury had found $1,000,000 in total damages, but that Dresser was only 5% negligent, Leger would have been left with the $182,331.05 in settlement with DWC and Continental and $50,000 in judgment against Dresser (5% of $1,000,000). He would have released a claim subsequently found to be worth $950,000 in exchange for $182,331.05. He could not then complain that he made a poor settlement and that he should receive more based on the jury's assessment of his total damages at $1,000,000.[9] Whether the plaintiff obtains a favorable or unfavorable settlement, he may only recover once for each wrongdoer's percentage of fault.[10]

The encouragement of settlements is the final factor which must be considered in this case. Whether the plaintiff or any of the defendants are ultimately found to have

---

tlement with his employer, DWC, his total award is not reduced by allowing a credit therefor.

Consequently, we disagree with the view of the Third Circuit in *Dobbins v. Crain Bros., Inc.,* 567 F.2d 559 (3d Cir. 1977), the only other case dealing with the issue involved here, that the vessel is entitled to a dollar for dollar credit when the employee has settled non-LHWCA claims with his employer.

8. The $127,840.00 figure may also be computed by subtracting the proportional negligence of Leger (35%), DWC (0%) and Continental (20%) from $284,090.00. The remainder is $127,840.00 attributable to Dresser.

9. Indeed, in *Fruge v. Damson Drilling Co.,* 423 F.Supp. 1276 (W.D.La.1976), a plaintiff partially settled for $15,000. In litigation with the nonsettling defendant the jury assessed his damages at $64,736.70 and found the settling and nonsettling defendants to be 25% and 75% at fault, respectively. The nonsettling defendant was held liable only for $48,552.51 (75% of the total damages). Thus, the plaintiff received $63,552.51 ($48,552.51 and $15,000) for his injuries of $64,736.70.

10. Implicit for Dresser's argument that it should receive a dollar for dollar credit for amounts Leger received in settlement is that dollars or amounts received in pre-trial settlement are worth as much as dollars or amounts obtained through the trial process. Thus, Dresser argues that, if Leger obtains through settlement and trial a total of $310,171.05 he gains double compensation to the extent that the figure exceeds the $284,090.00 total damages found by the jury. We reject Dresser's argument, since settlement dollars cannot be equated with dollars obtained in the trial process. Any amounts received in settlement are discounted both by plaintiff and defendant to take into account the risks and rewards of going to trial. Settlement dollars may be worth more or less than judgment dollars, depending on which party received the more favorable settlement.

It is clear that the condition vel non of double recovery depends upon whether one totals the absolute dollar figures of recovery and matches the total against the total damages or whether one totals the percentages of fault and sees that the total does not exceed 100%. Considering the competing principles involved, we choose the latter.

made a favorable settlement, we will "respect the aleatory nature of the settlement process . . . ." *Doyle v. United States,* 441 F.Supp. 701, 711 n.5 (D.S.C. 1977).[11] If Dresser were allowed to reduce Leger's recovery against it by the dollar value of Leger's settlement, Dresser would be left to pay a small portion ($284,090.00 total damages minus $182,331.05 settlement minus $99,400 for plaintiff's contributory negligence equals $2,358.95) of the total damages even though its negligence was the main contributing factor in causing them. Thus, Dresser would benefit substantially from its intransigence or miscalculation in refusing to settle the case. We refuse to adopt an approach which would reward a defendant for refusing to settle. If a party decides to try a case, it must be prepared to accept whatever benefits or burdens flow from its decision.

On cross appeal Leger contends that since Dresser had relinquished by contract its right to contribution from Continental, Leger's recovery against Dresser should not have been reduced by the 20% negligence attributed to Continental. In view of the previously stated considerations, this argument is without merit. A distinction which would allow against Dresser a recovery greater than Dresser's 45% negligence would run counter to the considerations of fairness, deterrence, and the avoidance of double recovery. While a contract between Dresser and Continental may prevent contribution between them, Leger may not use it to prevent a credit against the judgment in the amount of the percentage of negligence attributed to Continental.

For all of these reasons, we approve Judge Hunter's scholarly approach and adopt his rules as our own.

Affirmed.

---

11. The *Doyle* case contains an excellent discussion of the possible ways of dealing with this problem.