Alberta MIGUES

v.

NICOLET INDUSTRIES, INC.

Civ. A. No. B–78–768–CA.

United States District Court,
E. D. Texas,
Beaumont Division.

May 30, 1980.

Walter Umphrey, Port Arthur, Tex., and Marlin Thompson, Orange, Tex., for plaintiff.

Dale Dowell, Beaumont, Tex., for defendant.

## ORDER

ROBERT M. PARKER, District Judge.

Before the Court are the motions for judgment filed by the respective parties. Alberta Migues, the widow of Russell Migues and independent executrix of his estate, was awarded $3,000,000.00 (Three Million and No/100 Dollars) in compensatory damages by jury verdict on March 20, 1980. Mr. Migues, an insulation worker before his death, contracted mesothelioma as a result of exposure to insulation products containing asbestos.

Minutes before opening statements in the trial of this cause, thirteen of the original fourteen manufacturers named as defendants announced to the Court in chambers that a settlement had been reached. The Court was advised that the claims of the plaintiff against the thirteen manufacturers had been compromised and settled for the sum of $400,000.00 (Four Hundred Thousand and No/100 Dollars), with the dollar amounts of participation of the respective defendants not revealed to the Court. Plaintiff's agreement with the thirteen defendants in no way prejudiced or compromised her claims against the remaining non-settling defendant, Nicolet Industries, Inc. Without objection from Nicolet, the Court excused the settling defendants from participation in the trial. The case proceeded to trial and culminated in a verdict on behalf of Alberta Migues as described above.

Nicolet Industries, Inc., had filed cross-actions against the settling defendants. At the suggestion of Defendant Nicolet, the Court submitted an issue with respect to the cross-actions for contribution. Interrogatory III on the verdict form inquired of the jury whether exposure to the products of the thirteen settling defendants had been a producing cause of the death of Russell Migues. At the space provided beside the name of each settling defendant, the jury answered the inquiry affirmatively. Relying upon *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764 (Tex.1964) and Tex. Rev.Civ.Stat.Ann. art. 2212 (1971), Nicolet now urges the court to enter a judgment requiring it to pay Mrs. Migues $214,285.71 (Two Hundred Fourteen Thousand Two Hundred Eighty-Five and 71/100 Dollars), one-fourteenth of the jury's verdict. The Plaintiff has opposed the application of the pro rata apportionment rule, and has argued for an application of the credit rule. By way of a motion for new trial filed on behalf of Defendant Nicolet, the issue of remittitur is also before the Court. Having fully considered the issues and authorities, the Court will apply the credit rule, order a remittitur and enter a judgment consistent with this opinion.

## I.

### THE ERIE CONSIDERATIONS

█ Jurisdiction in this case is founded solely upon diversity of citizenship. As such, the Court is bound by the *Erie* rule. *Erie R.R. Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Simply stated, *Erie* requires a federal court in a diversity case to follow the applicable state law. The Court yields to the assertion made on behalf of the Defendant[1] that its task in this instance is to follow Texas law.

From that common meeting ground, the Court and the Defendant part company. After a close examination of the law of contribution in the state of Texas, none of the precedents is squarely on point. Each

of the cases cited on behalf of the defendants had one rather serious shortcoming for the Court's purposes today; the cases either had one negligent tortfeasor or were tried concurrently under negligence and strict liability theories. For reasons which will become apparent, contribution in the strict liability setting operates differently than it does in a pure fault system. More importantly, in a case in which an industry-wide tort of national dimension has been committed, apportionment of fault becomes an elusive concept.

A word about the leading cases at this juncture is appropriate. *Palestine Contractors*, of course, was purely a negligence decision which mandated, in recognition of certain policy concerns, pro rata apportionment between joint tortfeasors. The Court has noted with some emphasis the later decision of the Texas Supreme Court in *General Motors Corporation v. Simmons*, 558 S.W. 855 (Tex.1977). There the Court determined that Article 2212, rather than the newly enacted percentage fault statute, applied in products liability cases. Again, *Simmons* dealt with "sets" of defendants who were liable to the Plaintiff for injuries caused concurrently by negligence and a defective product. In terms of the theoretical problem of causative fault and contribution in a no fault system, it is of some importance to note that the *Simmons* court recognized the dilemma. *Simmons*, 862. The closest Texas case with regard to contribution among strictly liable joint tortfeasors is *Lubbock Manufacturing Company v. Perez*, 591 S.W.2d 907 (Tex.Civ.App.— Waco 1979, writ pending). Yet, *Lubbock Manufacturing* fails to furnish stare decisis precedent. *Lubbock Manufacturing* was tried and submitted on negligence and strict liability. *Id.*, 913. Therefore, contrary to the assertions on behalf of Defendant Nicolet, the law in Texas with respect to contribution among strictly liable tortfeasors committing an industry-wide tort has not yet crystallized.

---

1. The Court invited the participation of the settling Defendants. Two manufacturers, Fi-

· breboard Corporation and Combustion Engineering, chose to participate.

Therefore, the task of the Court is not as simple as the Defendant has visualized. In this instance, *Erie* requires much more of a federal district court. Chief Judge Brown described the task as a difficult one, noting that a federal court should utilize "all the currents which indicate the way the *Erie* wind blows." *Delduca v. United States Fidelity & Guaranty Company*, 357 F.2d 204, 207 (5th Cir.1966). Therefore, the Court must determine what a Texas court would do with the contribution question if it were presented in this context.

## II.

### THE CONTRIBUTION ISSUE

■ The first Texas contribution statute was passed in 1917. G. Hodges, "Contribution and Indemnity Among Tortfeasors," 26 Tex.L.R. 150 (1947). It is essentially the same statute that the Defendant relies upon today. The right of contribution is created by statute as contribution did not exist at common law. The English Law Courts looked with disfavor on a wrongdoer's claim that his partner in mischief ought to contribute to satisfaction of the wrong. *Hodges, supra.* Noting the differences between intentional torts and the negligence concept, Professor Hodges detailed the evolution of contribution and the growing acceptance of it by the commentators and the Courts. *Id.*, 151. The law of contribution, like the larger body of tort law, seeks to embrace and promote public policy.

Certain of these policy considerations led the Texas Supreme Court to extend the joint tortfeasor's right of contribution beyond the statutory framework in 1964. In creating the pro rata apportionment rule for settlements prior to judgment, the Texas Court relied upon three considerations:

1. Settlements should have finality; a circuity of actions should be avoided.

2. The Courts should encourage settlements.

3. A party to a settlement should be held to his arm's length transaction.

The Court noted in creating the rule of pro rata apportionment that one important policy concern had been compromised—the doctrine of one recovery. *Palestine Contractors*, 768.

■ The concept that a plaintiff may recover once, and once alone, for damages sustained as a result of tortious conduct is the essence of the doctrine of one recovery. In Texas, the doctrine has received much support. *Bradshaw v. Baylor*, 126 Tex. 99, 84 S.W.2d 703 (Tex.1935); *McCrary v. Taylor*, 579 S.W.2d 347 (Tex.Civ.App.—Eastland 1979, writ ref'd n. r. e.); and *Lubbock Manufacturing, supra* 923. The credit rule is founded upon the doctrine of one satisfaction. The language of the *Riley* court is particularly appropriate on this point:

> There being but one injury for which plaintiff can receive but on satisfaction, defendants are entitled to have credit—all sums paid by others—for the damages resulting from the common acts of all tortfeasors.

*Id., Riley v. Industrial Finance Service Co.*, Tex., 302 S.W.2d 652, 657.

The harsh aspect of *Palestine Contractors* —the loss of Plaintiff's full recovery—has been avoided in judicial interpretation of the pro rata rule. The process of avoiding the draconian consequences of *Palestine Contractors* began as early as a year after the Supreme Court rendered its decision. *Petco Corporation v. Plummer*, 392 S.W.2d 163 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.). *Palestine Contractors* has been tortured by distinctions. Chiefly, the distinctions have centered on the procedural prerequisites of the pro rata rule. *Connell v. Rosales*, 419 S.W.2d 673 (Tex.Civ.App. 1969 no writ), *E.I. du pont de Nemours and Co. v. McCain*, 414 F.2d 369 (5th Cir.1969). The procedural distinctions are not available to the Court in this instance. Nicolet Industries is seeking contribution from the settling defendants at the time of judgment, and a jury finding with regard to exposure and producing cause was secured.[2]

---

2. The Court entered its collateral estoppel order in this cause. In support of said order, see the Court's opinion in *Virginia Flatt v. Johns*

*Manville*, 488 F.Supp. 836, M–79–39–CA (E.D. Tex. Marshall Div. 1980).

**64**

*Petco, Connell* and *McCain* do, however, aid the Court in assessing which way the *Erie* wind blows.

The apparent justification for the compromise of the doctrine of one satisfaction[3] was the *Palestine* court's willingness to hold the Plaintiff to a bad bargain. The context of the bargaining process in this industrial tort litigation is so widely different from the process at issue in *Palestine Contractors* that it deserves some detailed development. Mesothelioma is a form of cancer. The disease is caused by the inhalation of asbestos fibres. Medical evidence exists to support the assertion that mesothelioma can result from the entry of one grain of asbestos into the lining of the lungs. Insulation workers, as a result of constant exposure to products containing asbestos, are subject to a high risk of contracting mesothelioma. The asbestos industry, composed of many manufacturers, has introduced hundreds of products into the stream of commerce which are, either by design or by failure to warn, unreasonably dangerous for their intended use. It is of some consequence to note that the industry represented by the fourteen original defendants marketed the asbestos products knowing the risks inherent to the insulation worker. On this issue, the Court need not comment further. *Borel v. Fibreboard*, 493 F.2d 1076 (5th Cir.1973), cert. denied 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974).

The number of asbestos-related cases in this district alone is quite dramatic. At the most recent count, 2,445 plaintiffs had claims against all or some of the same manufacturers named in this suit. These claims are essentially against the industry, and the producers in the industry must be considered joint tortfeasors. Yet, each producer standing alone whose use was found to be a producing cause of a plaintiff's injury is liable for the total extent of the harm. No statute or case authority exists for apportioning causative fault in this setting. Medically, it is doubtful, if not impossible,

to determine responsibility coexistent with extent of causation. As a matter of law, Nicolet is one-hundred percent responsible for the recovery the jury awarded Alberta Migues on behalf of her late husband.

This legal liability should be considered in terms of the practice in the district with regard to the conduct of these suits. The litigation is generally conducted on a collective basis. The named defendants representing the industry as a whole form a single litigation team. Often, a lead counsel is designated. Motions are prepared which are joined in on behalf of all the defendants. Further, and most important to the question before the Court, is the collective nature of the conduct of the settlement negotiations. The interests of all the producers become so entwined that the individual defendants cease to function as individuals and take on a collective industry identity.

■ In the context of this case, Nicolet Industries refused to join in the settlement. Now, the same defendant seeks what is, in effect, a reward from the Court for its failure to settle. Surely, in this context, the application of the pro rata rule stands *Palestine Contractors* on its head. In abandoning the doctrine of one recovery, the Texas Supreme Court justified it on the basis of the Plaintiff having made a bad bargain. In this case, it is Nicolet Industries who has made the bad bargain. By the same token, Nicolet should be the party held to its arm's length transaction.

In applying the credit rule, the Court is guided by two recent cases: (1) *Columbia Engineering, Ltd. v. Dorman*, 602 S.W.2d 72 (Tex.Civ.App.1980,) and (2) *Leger v. Drilling Well Control*, 592 F.2d 1246 (5th Cir.1979). *Columbia* is persuasive on the issue of the viability of the doctrine of one recovery in the Texas courts. *Leger*, a Jones Act case tried in the federal district court in Louisi-

---

3. Referring to the compromise of the plaintiff's recovery, the Texas Supreme Court termed it

the "unattractive aspect" of its ruling in *Palestine Contractors*.

ana, contains a powerful articulation of the relevant policy concerns.

In *Columbia,* a settlement was reached prior to judgment between the plaintiff and five of the six defendants. Having been a suit founded upon negligence alone, Article 2212a applied. The jury, however, found the remaining non-settling defendant one-hundred percent negligent in the apportionment submission. Therefore, Columbia had no right of apportionment. In applying the credit rule, the Beaumont Court reinforced the doctrine of one recovery. The trial court had refused to credit the amount of the settlement against the jury verdict. The majority of the Court of Civil Appeals disagreed with the trial court's action, noting that the failure to credit afforded the plaintiff a windfall.

Chief Judge Dies dissented from the majority's holding which applied the credit rule. Central to his dissent was his assessment that a totally responsible tortfeasor should not later reap a benefit from a co-defendant's bad bargain in settlement. The upholding of the doctrine of one recovery in the face of the Chief Judge's powerful dissent signals the result a Texas Court would reach if it were faced with the issue at hand.

By analogy,[4] *Leger* is appropriate in the Court's consideration of the policy questions in as much as the Fifth Circuit persuasively articulates the very issues that the Court has relied upon in applying the credit rule. A portion of the opinion is particularly appropriate:

> If a party decides to try a case, it must be prepared to accept whatever benefits or burdens flow from its decision.

*Leger,* 1251.

In *Palestine Contractors,* through a covenant not to sue an insolvent defendant, the Plaintiff clearly made the choice of litigants. In this case, Nicolet Industries, by failing to settle or failing to join in the cartel settlement, made the conscious decision to try the case. It must accept the burden of its decision.

At the appropriate time, the Court will enter a judgment on behalf of the plaintiff crediting the amount of the settlement against the verdict.

## III.

## REMITTITUR

Defendant Nicolet's Motion for New Trial places before the Court the issue of the amount of the compensatory damages assessed by the jury. The Court agrees with the Defendant that the three million dollar award is excessive. The practice in the federal courts is well established in this regard:

> If the amount of damages awarded is excessive, it is the duty of the trial judge to require a remittitur or a new trial.

*Linn v. Plant Guard Workers,* 383 U.S. 53, 65, 86 S.Ct. 657, 664, 15 L.Ed.2d 582 (1966). In accordance with the established procedure of remittitur, the Court puts the election to the Plaintiff. See generally, 11 C. Wright & Miller, *Fed. Prac. & Pro.* § 2815 (1973).

█ It, therefore, appears to the Court that the size of the verdict in light of the evidence adduced with regard to the elements of damages and particularly with regard to Mr. Migues' earning capacity is unreasonable. It further appears to the Court that the size of the verdict in light of the evidence shocks the conscience and requires reduction. Therefore, if the Plaintiff accepts the remittitur, the Court will enter a judgment for $1,111,331.12 (One Million One Hundred Eleven Thousand Three Hundred Thirty-One and 12/100 Dollars), an amount representing a reduced verdict of 1.5 million dollars less the amount of the settlement ($400,000.00) plus the stipulated medical expenses ($11,331.12).

It is, therefore, ordered that the Plaintiff respond in writing to the Court no later than ten days from the date of this opinion as to whether the Plaintiff accepts the remittitur. Should the Plaintiff reject the

---

4. The Court recognizes the limited precedential effect of *Leger.* However, the policy the *Leger* court embraces is relevant and persuasive on this issue.

remittitur, the Court will order a new trial on the issue of damages.

It is so ORDERED.