Marvin E. MYERS, Plaintiff–Appellee,

v.

GRIFFIN–ALEXANDER DRILLING
CO., et al., Defendants–Appellees,

v.

CAMCO, INC., Defendant–Appellant.

No. 89–4800.

United States Court of Appeals,
Fifth Circuit.

Sept. 7, 1990.

Randall K. Theunissen, Allen, Gooch, Bourgeois, Breaux, Robison & Theunissen, Lafayette, La., for defendant-appellant.

Jack W. Harang, Stuart H. Smith, Abadie, Harang & Colvin, Metairie, La., for plaintiff-appellee.

Laura K. Austin, Edwin G. Preis, Jr., Lafayette, La., for defendants-appellees.

Before WISDOM, DAVIS, and BARKSDALE, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Camco, Inc. (Camco) appeals a damage award to Marvin Myers (Myers) for personal injuries he sustained on an offshore drilling vessel. Except for a minor reduction in damages, we affirm.

### I.

In June 1986, Myers injured his back while working as a roustabout aboard a drilling vessel in the Gulf of Mexico. Myers was an employee of the intervenor, Griffin–Alexander Drilling Company (Griffin), which owned the drilling vessel.

The accident occurred when Myers climbed atop a nitrogen tank, owned and operated by Camco, to perform part of his job. While he was atop the tank, an employee of Camco discharged nitrogen from the tank, exposing Myers to nitrogen vapor in violation of safety recommendations. Myers' evidence at trial revealed that the released nitrogen formed a vapor in the atmosphere surrounding Myers and impaired his ability to function. Myers then attempted to descend the ladder on the tank. Near the bottom of the ladder, a rung was missing. When Myers came to that part of the ladder in his allegedly impaired state, he fell and injured his back. Treatment of the injuries required back surgery. Some permanent disability has resulted.

In May 1987, Myers brought suit against Griffin under the Jones Act, 46 U.S.C.App. § 688, and against Camco under the General Maritime Law. Prior to trial, Myers settled with Griffin. Under the terms of that settlement, Griffin gave Myers $60,000 for release of all claims against Griffin arising out of this lawsuit. In addition, Myers agreed that Griffin would recover fifty cents on every dollar, up to a total of $60,000, from sums Myers might receive from Camco and Camco's insurers in settlement or by judgment.

At trial, the jury found Camco ninety-nine percent negligent and plaintiff Myers one percent negligent. The jury further found that Griffin was free of any negligence and that the vessel owned by Griffin had not been unseaworthy. The jury awarded $185,000 for past pain and suffering; $75,000 for past lost earnings; $9,000 for past lost fringe benefits; $60,000 for future bodily injury, pain and suffering, disability, mental anguish and loss of capacity for enjoyment of life; and $250,000 for loss of future earning capacity.

Camco filed motions for judgment notwithstanding the verdict, for new trial, and for remittitur. The trial court denied these motions. Camco now appeals the judgment and the denial of its post-trial motions.

## II.

### A.

Camco first challenges the admissibility of the expert testimony of Dr. Keith William Van Meter. The standard for reviewing the qualification of an expert witness is abuse of discretion. "[T]he determination of admissibility [of opinion evidence by an expert witness] should be sustained 'unless manifestly erroneous' ". *In re Air Crash Disaster at New Orleans, La.,* 795 F.2d 1230, 1233 (5th Cir.1986), *citing United States v. Johnson,* 575 F.2d 1347, 1360 (5th Cir.1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 454 (1979).

Camco argues that the district court erred in admitting expert testimony by Dr. Van Meter on the probable effects of the nitrogen on Myers because this testimony was outside Dr. Van Meter's field of expertise which was hyperbaric medicine. Hyperbaric medicine is the area of medicine dealing with the effects on humans of various gas mixtures and pressure exposures in applications including diving, aviation and space travel. Specifically, Camco argues that expertise in hyperbaric medicine does not qualify Dr. Van Meter to testify to the characteristics of nitrogen as it reacts to the atmosphere at sea level.

Contrary to Camco's contention, Dr. Van Meter testified during voir dire, that his specialty did include the study of the effects of nitrogen on an individual at sea level. Dr. Van Meter concluded that Myers' description in his testimony of how he felt just before he fell indicated that Myers was suffering from lack of oxygen at the time of the accident.

The district court overruled Camco's objections that Dr. Van Meter did not have the expertise to give an opinion on the effect of the nitrogen on Myers. We conclude that the district court did not abuse its discretion in permitting this testimony. Although most of Dr. Van Meter's work with gases such as nitrogen was related to the effect of those gases in chambers simulating conditions under water, the district court was entitled to conclude that Dr. Van Meter was also qualified to testify to the effects of those gases at sea level.

### B.

Camco argues next that the evidence presented at trial was insufficient to support the jury's finding that Camco was ninety-nine percent at fault and that Myers was only one percent responsible. Camco contends that the evidence presented by its witness, Dr. Dario, conclusively established that it would have been physically impossible under the circumstances for the nitrogen gas to have impaired Myers' functioning. Camco also argues that there was insufficient evidence of a defect in the ladder. Camco concludes that because Myers could not have been impaired by the nitrogen gas and the ladder was not defective, Myers is wholly responsible for his injuries.

We must view the evidence in the light most favorable to the verdict; we may reverse only if no reasonable jury could have found in favor of the plaintiff. *See, e.g., Boeing Co. v. Shipman,* 411 F.2d 365, 370 (5th Cir.1969).

Dr. Dario testified that, according to the data he collected, the oxygen level around the tank from which Myers fell would have been 20.7 percent. Myers' expert agreed that this oxygen level presented no hazard. But the jury was not obliged to accept Dr. Dario's opinion. The jury was free to conclude that the expert's opinion was predicated on incorrect data or flawed calculations, or, for some other reason, was not credible.

In addition, as Myers points out, a jury-finding that Myers was suffering from oxygen deprivation was not essential to the verdict in favor of the plaintiff. The jury could have merely concluded that the ladder was defective and based liability on this finding.

Camco's argument that the evidence was insufficient to support a finding that the ladder was defective fails. Camco explains that a co-employee had no trouble going up and down the ladder and that an employee of Griffin looked at the ladder after Myers' accident, noted that it was built with a

rung missing, but did not report it because he did not consider it a hazard. However, this evidence would not preclude the jury from finding that a ladder with a missing rung was defective.

Camco argues, in effect, that the jury should have believed Camco's expert witness and Camco's evidence, rather than the witnesses for Myers who the jury apparently chose to believe. Based on the evidence presented, a reasonable jury could have found Camco ninety-nine percent responsible for the accident.

### C.

Camco next argues that the jury's award of damages was excessive and contrary to the evidence. A trial court's damage award should not be overturned unless clearly erroneous. *See Hernandez v. M/V Rajaan*, 841 F.2d 582, 587, *reh'g denied en banc*, 848 F.2d 498 (5th Cir.), *cert. denied*, 488 U.S. 981, 109 S.Ct. 530, 102 L.Ed.2d 562 (1988). In *Wood v. Diamond Drilling Co.*, this court explained the heavy burden the defendant must overcome in order for the court to overturn the jury damage award:

> We have repeatedly held that a jury's award is not to be disturbed unless it is so large as to "shock the judicial conscience", indicated "bias, passion, prejudice, corruption, or other improper motive" on the part of the jury, or is "contrary to all reason." Thus, before a court of appeals may set aside an award of damages as being excessive, it must make a detailed appraisal of the evidence bearing on damages and find that, in light of such detailed evidence, the amount of the jury award is so high that it would be a denial of justice to permit it to stand.

691 F.2d 1165, 1168 (5th Cir.1982), *cert. denied*, 460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 947 (1983) (citations omitted).

■ Camco argues that the jury's $185,000 award for past pain and suffering was excessive because Myers received relief after he underwent successful surgery less than a year after the accident. However, Myers suffered a herniated disc and under-

went major spinal surgery. In addition, the record indicates that Myers experienced significant pain before his surgery. The damage award for past pain and suffering is not clearly erroneous.

■ Camco next argues that the $250,000 award for future loss of earnings is excessive because Myers had completed high school and two years of junior college. Myers' economist testified that if Myers was partially disabled and able to return to a minimum wage job, his wage loss would be $276,277.18 and if he was able to return to work and earn five dollars an hour, his wage loss would be $242,934.59. The record evidence supports the jury's implicit conclusion that in the future Myers will be restricted to a minimum wage job. This award is therefore supported by the record.

■ Camco also contends that the $60,000 award for future pain and suffering is excessive in light of the successful surgery that Myers underwent. However, Myers presented evidence that he will suffer some pain in his back and legs for the rest of his life. He also has scars from the surgery and disability to his body as a whole. The jury's award for future pain and suffering was not beyond the realm of reasonable awards.

■ Finally, Camco attacks the jury's award of $75,000 for loss of past earning which covered earnings lost over the three years between the accident and the trial. According to Myers' own expert witness, Myers' lost after-tax earnings from his job at Griffin would have been only $55,436.96.

Myers argues that the jury may have been taking into consideration the money that he usually earned by working as a painter in addition to his work for Griffin. But the only evidence in the record that he did any such additional work was one exchange consisting of the following two sentences:

Q: Marvin, since you left the junior college, have you worked up until this accident pretty consistently all of those years?

A: Pretty consistently. I'd work on the iron working jobs painting. There would

be times when you'd be off a week or two.

This testimony does not support the jury's award of an additional $19,563.04 to Myers for lost past earnings because of his part time painting work.

■ Myers contends that the jury might have arrived at the $75,000 figure for lost past earnings based on the fact that Myers' pre-tax earnings for 1984 and 1985 averaged $25,000 a year. But it was impermissible for the jury to base the award on Myers' pre-tax earnings. *See Hernandez*, 841 F.2d at 587.

In sum, we decline to disturb the award except with respect to the award for past lost earnings. The maximum award the record will support for past lost earnings is $55,436.96. The award will be reduced by $19,563.04.

### D.

■ Finally, Camco argues that it is entitled to an offset against the award of damages for the amount paid in settlement by Griffin. Camco's entire argument on this issue in its briefs is as follows:

> [T]he court erred in refusing the offset to which Camco, Inc. is entitled because of the settlement between Griffin–Alexander and complainant prior to trial, which settlement was in the amount of $60,000.00. Under the circumstances, all amounts paid by Griffin–Alexander must be deducted from the judgment against the complainant [sic] to avoid a double recovery by the complainant. This result is consistent with *Hernandez v. M/V Rajaan*, 841 F.2d 582 (5th Cir.1988).

Camco's suggestion that an offset is required to avoid double recovery by Myers is wholly without merit. By the terms of Myers' settlement agreement with Griffin, Myers is now required to reimburse Griffin the entire $60,000 he received from Griffin

in settlement.[1] Therefore, the issue of double recovery is irrelevant to the instant case.

*Hernandez*, 841 F.2d at 591, which Camco relies on as disapproving double recovery, does not control. Although the *Hernandez* court allowed the judgment to be reduced by the amount the plaintiff received from the settling party, the plaintiff in *Hernandez* was not required to reimburse the settling defendants as Myers must do in the instant case. Because Myers can make no double recovery in this case, the district court did not violate *Hernandez* in denying an offset.

Myers and Griffin argue that *Leger v. Drilling Well Control., Inc.*, 592 F.2d 1246 (5th Cir.1979), governs this case. However, we read *Hernandez* as adopting the reasoning of the Eleventh Circuit opinion in *Self v. Great Lakes Dredge & Dock Co.*, 832 F.2d 1540 (11th Cir.1987), which declined to follow *Leger* on grounds that *Leger* was inconsistent with *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979). We, therefore, conclude that the *Hernandez* rule is applicable here but, for the reasons stated above, does not require a credit.[2]

### III.

The district court did not err in admitting Dr. Van Meter's expert testimony. There was sufficient record evidence to support the jury's liability verdict. The damage award was not excessive except for $19,-563.04 of the award for past lost earnings. Camco is not entitled to an offset for Myers' settlement with Griffin.

AFFIRMED in part, VACATED in part, and REMANDED with instructions to

---

1. In the settlement agreement, Griffin gave Myers $60,000 and Myers agreed to repay to Griffin fifty cents on every dollar he received by settlement or judgment from Camco up to a total of $60,000. Since Myers received more than $120,000 from Camco, he must now repay the full $60,000 to Griffin.

2. In *Leger*, the court held that a judgment against a non-settling defendant should be reduced only to the extent of the fault of the settling defendant. Thus, we agree with Myers that if *Leger* applied, Camco is entitled to no reduction in the judgment because Griffin, the settling defendant, was exonerated.

grant Myers a new damage trial unless he accepts a remittitur of $19,536.04.