**Raymond LEGER**

v.

**DRILLING WELL CONTROL, INC., et al.**

**Civ. A. No. 17685.**

United States District Court,
W. D. Louisiana,
Lafayette Division.

Jan. 5, 1976.

Haygood & Putnam, Abbeville, La., Bob Wright, Domengeaux & Wright, Lafayette, La., for plaintiff.

Davidson, Meaux, Onebane & Donohoe, John G. Torian, Lafayette, La., Scofield, Bergstedt & Gerard, Richard E. Gerard, Jr., Lake Charles, La., for defendants.

EDWIN F. HUNTER, Jr., Chief Judge:

## THE SETTLEMENT PROVISION WHEREBY TRAVELERS WAS TO RECEIVE 50% OF AMOUNT RECOVERED FROM DRESSER

Leger filed suit for personal injuries sustained aboard a self-propelled, jack-up workover barge designated as the "Dresser VII." The complaint was filed under the General Law Maritime and the Jones Act, naming as defendants the plaintiff's employer, Drilling Well Control, Inc.; the barge owner, Dresser Offshore Services, Inc.; and the well operator, Continental Oil Company, which had hired the Dresser VII for a workover operation on its well. The morning of the trial (June 23, 1975), plaintiff settled his claims against both Drilling Well Control, Inc. and Continental Oil Company for a total of $182,331.05. Travelers Insurance Company, in its capacity as insurer of Drilling Well Control, paid $82,331.05, and in its capacity as insurer of Continental paid $100,000.00.

Counsel for Dresser, prior to trial, requested the Court to permit him to reveal to the jury the settlement as set forth in the preceding paragraph. This request was denied on the basis that it in no way affected the answer to any of the interrogatories.

The jury returned a verdict in the amount of $204,503.94 against Dresser on June 25, 1975.

On July 21, 1975, plaintiff voluntarily filed in the record the release and indemnity agreement. The Court and Dresser learned for the first time that the release contained a provision that plaintiff would pay to Travelers one-half of any funds actually collected by him from Dresser, whether said funds were collected as a result of a judgment or settlement.

Dresser's counsel vigorously argues that the contingency terms of the release should have been made known to him prior to the trial. Dresser insists, too, that the jury should have known so that it could properly evaluate the credibility of witnesses, who were employees of Continental and Drilling Well. We requested the names and statuses of those witnesses. In response, Dresser states:

"The witnesses who may have been influenced by the fact the The Travelers Insurance Company is to recover 50% of whatever the plaintiff ultimately recovers from Dresser Offshore Services, Inc. are:

1) Louis R. Records, Vice-President of Drilling Well Control, Inc., the plaintiff's employer;

2) John W. Bullard, Jr., a production foreman for Continental Oil Company, the well operator;

3) Robert B. Stevens, Field Production Foreman for Continental Oil Company."

In conjunction with Dresser's motion for a new trial, Dresser filed into the record as evidence the following documents:

1) The deposition of Louis R. Records;

2) The deposition of John W. Bullard, Jr.;

3) The deposition of Robert B. Stevens.

Dresser has detailed by line and page the testimony of these witnesses prior to trial and at trial, and asserts:

" * * * their conceptions of the plaintiff's claim changed drastically sometime between the giving of their pre-trial depositions and the actual

trial. It is probably safe to assume that these conceptions changed when the settlement was consummated."

Speaking of the same witnesses, plaintiff's counsel replies:

"What did change as a result of the settlement was their attitude toward the claim. Their originally adverse interest, that made the truth admittedly hard to establish, was neutralized. With this neutralization came their willingness to testify freely as to the true circumstances."

One might inquire: Why did not counsel for Dresser endeavor to impeach these witnesses? It is not for us to pass upon the trial tactics of Dresser's counsel, but surely, if the jury considered there were contradictions and if they knew that Continental's insurer was in effect a litigant to the tune of 50%, it could have had a devastating effect upon the jury's weighing of testimony of these witnesses. Dresser's counsel asserts that had he been aware of the contingent recovery arrangement between plaintiff and the other defendant, his approach to the testimony of Records, Bullard and Stevens would have been significantly different.

Dresser relies heavily on *Daniel v. Penrod*, 393 F.Supp. 1056 (D.C.1975). The rule of *Daniel* is that originally adverse parties, after confecting an agreement which makes them allies, cannot pretend to remain in adverse positions and thereby use the rules of procedure and evidence designed for true adverseness. *Daniel* is distinguishable. Here, the two settling defendants were dismissed before the trial and the adversary trial process was not improperly used.

Although the settling defendants were dismissed, their interest in the law suit was not terminated. Instead, their interests were realigned with those of the plaintiff; Travelers was to receive one-half of every dollar plaintiff recovered. The jury must have perceived the case to be a contest between plaintiff and Dresser Offshore Services, Inc., when in reality the case was between Raymond Leger, Drilling Well Control, Continental and Travelers, against Dresser. We do not know what effect such knowledge might have had on the jury's evaluation of the key testimony of Continental's employees.

▆▆▆▆ Would the result have been the same—that is, would the jury have reached the same verdict? We have no way of knowing. Defense tactics and arguments would have surely been altered. We must determine whether the jury's and counsel's lack of knowledge mandates a new trial. After painstaking reflection we are convinced as a matter of law that plaintiff is entitled to a new trial, limited to the issue of liability. Our holding: An omnipresent characteristic of modern maritime litigation is its multiparty nature. When one co-defendant settles with the plaintiff and the settlement agreement provides that it is to receive 50% of any judgment recovered from the remaining defendant, then and in that case such an agreement must be revealed prior to trial, so that a full and fair evaluation may be made by counsel and jury.[1] Especially is this true here, where the key witnesses were employees of the settling defendants. A new trial is ordered.

1. Counsel are top flight people in every way. Each has acted in what he perceives to be his client's best interest. No one had any intent of deceiving the court or the jury. Plaintiff perceived the case, until just before the trial, as a contest in which he was asserting a claim against all defendants, and in which each defendant was vigorously resisting. Once the arrangement was struck, counsel revealed the dollar amount and motions to dismiss as to settling defendants were entered. Lacking the benefit of a pronouncement to the contrary and considering the 50% contingency arrangement nothing but a subrogation, counsel (obviously for strategic considerations) did not volunteer the contingency features of the release and settlement. They represented their clients most effectively, but a new trial is mandatory. Refusal to grant one would constitute an abuse of discretion.

## WHAT CREDIT, IF ANY?

Is Dresser entitled to credit against the judgment? If so, in what amount? We have granted a new trial. Should the Court of Appeals grant an interlocutory appeal and reverse, a decision must be made as to whether or not Dresser is entitled to credit. It is therefore appropriate that we speak to this facet of the case. A resolution of this problem is also required to supplant the present disarray in this area and to lay the "ground rules" for a new trial.

Dresser is precise. An unreleased defendant is entitled to full credit for all amounts paid by other defendants. This procedure, it is argued, fully compensates the plaintiff while not providing him with unjust enrichment. Dresser cites cases which are pertinent. *Billiot v. Sewart Seacraft, Inc.*, 382 F.2d 662 (5th Cir., 1967); *Loffland Bros. Co. v. Huckabee*, 373 F.2d 528 (5th Cir. 1967); *Cates v. United States*, 308 F.Supp. 199, D.C., modified and affirmed 451 F.2d 411, 5th Cir.[2] These cases were decided before the rule of contribution between joint tort-feasors in maritime cases was recognized in *Cooper Stevedoring Co. v. Kopke*, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974). The pre-*Kopke* inflexibility was a product of the blanket prohibition against contribution in non-collision cases. The disappearance of that prohibition requires a judicious reconsideration of precedent and the development of a realistic and equitable approach.

Settlements with some, but not all, are frequently made and must be encouraged. To adopt the full credit rule advanced by Dresser would frustrate such partial settlements and promote litigation. Prior to *Kopke*, there was no need to grapple with effect of releasing one or more joint tort-feasors. Now that contribution among joint tortfeasors is recognized, correspondeing rules involving joint tortfeasor settlements must be fashioned. We undertake this task, not as an effort to apply Louisiana law, but to attain a uniform maritime rule for joint tortfeasor settlements in maritime cases.

We hold that the effect of the pre-trial settlements with Continental and Drilling Well Control upon the ultimate verdict rendered against Dresser are governed by these principles:[3]

■ (1) Where the concurrent fault of two or more persons combine to produce injury, the parties at fault are joint tortfeasors and, as such, are liable to the injured plaintiff.

■ (2) The Federal Rules of Civil Procedure have liberalized joinder and impleader rules in maritime claims to facilitate the presence of all interested parties in one action. All potential joint tortfeasors may be made third party defendants, pursuant to Rule 14(c). Application of the Rule in this manner is the only possible interpretation of it consistent with its purpose and intent.[4]

2. They appear to have their genesis in *State Farm Automobile Insurance Co. v. Bourne*, 220 F.2d 921 (5th Cir., 1955), a case decided by the writer and affirmed by the Fifth Circuit. *Bourne* involved *Louisiana law*, prior to amendment in 1960. The amendment permitted interpleader of joint tortfeasors. *Bourne* is *not* Louisiana law today.

3. The confidence of counsel in their ability to predict the legal consequences of their actions is vitally necessary to facilitate settlement and efficiency in adjudication.

4. "(c) Admiralty and Maritime Claims. When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h), the defendant or claimant, as a third-party plaintiff, may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences. In such a case the third-party plaintiff may also demand judgment against the third-party defendant in favor of the plaintiff, in which event the third-party defendant shall make his defenses to the claim of the plaintiff as well as to that of the third-party plaintiff in the manner

(3) Where there are two or more defendants (alleged joint tort-feasors), and the plaintiff settles with and grants a release as to one or more of them, reserving his rights against the remaining, the settling defendants are relieved of any further liability to the plaintiff.

(4) When two or more parties have contributed by their fault to cause injury to another, the liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault.[5]

(5) A tortfeasor seeking to assert a reduction by the degree of fault of alleged joint tortfeasors must prove by a preponderance of the evidence that the settling defendant was, in fact, at fault.

(6) A settling party's negligence is considered only when he has been made a party to the suit. In such a case, the judgment awarded to the claimant against the non-settling defendant is credited with the dollar amount represented by the proportion of negligence, if any, attributed to the settling parties.

## STATUS OF LITIGATION.

(A) If the case is retried, it will be on liability alone. Quantum has been fixed at $284,050.00. Special interrogatories will be submitted to the jury as to the negligence, if any, of Leger, Continental, DWC, and Dresser.

(B) Should our decision granting a new trial be reversed, we shall: accept the jury's findings as to Leger and Dresser; determine the negligence, if any, of DWC and Continental; and enter judgment accordingly. There was no request for a special finding as to DWC's or Continental's negligence. We would, under Rule 49(a), make those factual determinations on the basis of the evidence heretofore presented.

Thus done and signed in Chambers at Lake Charles, Louisiana, on this the 5th day of January, 1976.[6]

---

provided in Rule 12 and the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff.

5. In *Kopke* the Court specifically reserved the question of whether contribution should be be "based on an equal division of damages or should be relatively apportioned in accordance with the degree of fault of the parties." 417 U.S. 106, 108, n. 3, 94 S.Ct. 2174, 2176, 40 L.Ed.2d 694 (1974). The Supreme Court, later, in *United States v. Reliable Transfer*

*Co.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed. 2d 251 (1975), recognizing the harshness of the equal division rule in the face of disparate blame, categorically replaced it with a holding that "when two or more parties have contributed by their fault * * * liability for such damages is to be allocated among the parties proportionately to the comparative degree of their fault * * *."

6. We need not determine now the issue of pre-judgment interest; its final resolution must await further developments.