Edward KIZER, Plaintiff,

v.

PETER KIEWIT SONS' CO., Defendants.

C 75–2147 CFP.

United States District Court, N. D. California.

May 7, 1980.

Garrett P. Graham, Eugene V. Flynn, Sullivan, Graham & Camp, San Francisco, Cal., for plaintiff.

John N. Connell, Derby, Cook, Quinby & Tweedt, San Francisco, Cal., for Peter Kiewit Sons' Co.

Duane Grummer, James Parton, III, Lynch & Lufbourrow, San Francisco, Cal., for Clyde Iron Works, Inc.

## MEMORANDUM DETERMINING LIMITATION OF LIABILITY

POOLE, District Judge.

In this case, plaintiff Edward Kizer brought an action in admiralty against PETER KIEWIT SONS' CO., (herein Kiewit) and Clyde Iron Works, Inc. (herein Clyde), defendants, to recover damages for injuries suffered while working as an oiler on the barge THELMA, which was owned and operated by Kiewit, when he lost his balance and received severe injuries to his hand, which was crushed by a counterweight of a crane aboard the vessel. Plaintiff's theory of action was based upon negligence of Clyde and Kiewit and upon the theory of product liability against Clyde.

Clyde was in the business of designing, manufacturing and installing dredging cranes in water craft. In 1966, Clyde designed and sold to Kiewit a crane for use in excavation service in dredging projects. The crane essentially performed dredging by a clamshell bucket suspended from a boom by which it was moved laterally and up and down. Cables or tag lines connected the crane through the boom and also to a counterweight installed in a tower. The function of the counterweight was to stabilize the clamshell bucket so that it did not swing from side to side while in operation. When lowered or swung outboard or laterally from the boom, the counterweight would rise within the tag line tower framework. When the bucket was raised or swung inboard or laterally, the counterweight would descend. The tower consisted of a metal framework 34 feet in height and 2 feet square. Its base was situated on a walkway platform of the crane near the foot of the boom. The counterweight weighed 15,535 pounds. The area of the tower near the foot of the boom was without screens or guards. When the crane had been installed, the manufacturers had also installed a hand winch on the tower in such position that it protruded outward from the tower forming a fixed metal device just in front of the unscreened opening.

It was plaintiff's duty to grease certain fixed fittings at the foot of the boom in the vicinity of the counterweight tower. He performed this task at the beginning of each shift. He was injured in passing the base when he lost his footing and attempted to steady himself by reaching behind for an angle iron which was part of the tower cage. The clamshell bucket was then in operation and the counterweight was descending. As it came down it crushed plaintiff's right hand against the framework resulting in permanent partial disability.

After trial, the Court found that Kiewit was negligent and its negligence contributed to two-thirds of the accident; that Clyde was negligent and that its negligence contributed to one-third of the accident; and that plaintiff was not guilty of negligence.

Total damages of $233,694 were found by the Court to have been sustained by plaintiff.

Prior to the trial, plaintiff had entered into a settlement agreement with Kiewit under which Kiewit paid plaintiff $40,000 and obligated itself to pay an additional $60,000 if plaintiff did not prevail against Clyde. Plaintiff and Kiewit contended that plaintiff was entitled to recover as against Clyde the total amount of damages found after deducting the $40,000 paid to plaintiff by Kiewit. Clyde contended that under federal maritime law, Clyde is liable only for such amount of the payment as is directly proportionate to its negligence which caused the accident. The Court sustained Clyde's position and indicated that it would limit judgment against Clyde to one-third of the total or $77,898. The Court further indicated its intention to consider whether under the facts of this case Clyde's negligence amounted only to one-fourth rather than one-third of the total.

After careful consideration, the Court has determined to adhere to its initial apportionment of negligence which was that two-thirds of the fault lay with Kiewit and one-third lay with Clyde. The Court adheres also to its conclusion that Clyde is responsible only for its proportional contribution to the negligence.

The central issue is whether plaintiff shall have his recovery against a non-settling defendant reduced by an amount attributable to the settling defendant's proportional fault (in this case two-thirds), or only by the actual amount paid to plaintiff by the settling defendant ($40,000). In *Doyle v. United States*, 441 F.Supp. 701 (D.S.C.1977), the court extensively discussed and compared these alternatives in the maritime law context which is present in this case. It concluded:

"This court is of the opinion that the 'reduce by proportional fault' theory commends itself particularly in admiralty jurisprudence with its comparative fault doctrine. Since the decisions in *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409, 74 S.Ct. 202, 204, 98 L.Ed. 143 (1953) and *United States v. Reliable Transfer Co., Inc.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), it has been settled law

that a party to a maritime collision should bear only the proportional share of damages attributable to his fault. Under the 'reduce by amount paid' theory, a non-settling defendant could end up paying more than *Reliable Transfer* dictates (such as here where the defendants have eliminated contribution by dismissing their cross claims with prejudice). The better rule, this court feels, is to respect the aleatory nature of the settlement process and to hold both the plaintiff and settling defendant to their gamble. The plaintiff gambles that the amount he receives in settlement plus the amount recoverable from the non-settling defendant will be greater than he could have recovered if he pursued both actions to judgment (i. e., the plaintiff hopes the settling defendant will pay more than what is eventually determined to be his proportional share of the damages). The settling defendant gambles that the amount he pays in settlement is less than he would be liable to pay, had he gone to judgment. To allow the plaintiff, to, in effect, 'void' this bargain and execute against the non-settling defendant for the entire damage award less the amount actually paid in settlement, with a right of cross claim preserved against the settling defendant in favor of the non-settling defendant, runs contrary to logic and to the theory adopted by the Supreme Court in maritime collision cases. *United States v. Reliable Transfer, supra*, at 411, 95 S.Ct. 1708. On this topic generally, see, 18 Am.Jur.2d *Contribution* § 52 (1965)."

*Id.*, at 711 n.5.

The cases cited in *Doyle* in support of the "reduced by amount paid" approach are *not* maritime cases. *Alexander & Baldwin v. Peat, Marwick, Mitchell*, 385 F.Supp. 230 (S.D.N.Y.1974), involved securities; *Gomes v. Brodhurst*, 394 F.2d 465 (3rd Cir. 1967), and *Simonsen v. Barlo Plastics Co., Inc.*, 551 F.2d 469 (1st Cir. 1977), both involved torts. By contrast, maritime cases follow the "reduced by proportional fault" rule. See *Fruge v. Damson Drilling*, 423 F.Supp. 1276 (W.D.La.1976); *Leger v. Drilling Well Con-*

*trol,* 69 F.R.D. 358 (W.D.La.1976); *aff'd.* 592 F.2d 1246 (5th Cir. 1979).

In post-trial briefs, plaintiff has argued that *Doyle* and its cited authorities are not controlling; that the Court is not bound by them and ought not follow their lead. Plaintiff argues that California has enunciated policies holding joint tort feasors to be jointly liable. It is clear that federal maritime law, not state law, controls this case. *Pope & Talbot v. Hawn,* 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953). Plaintiff suggests the "reduce by amount paid" rule has the merit of encouraging settlement which, of course, is federal policy, and because it reflects the solicitude which courts of admiralty have long shown to seamen. The Court believes however that the rule urged by plaintiff is susceptible both to manipulation and undue pressure, and as in this case, to judgments which would be unfair in amount against the non-settling defendant. The Court believes the reasoning of *Doyle* to be sound and that it should be followed.

After the Court had announced its decision, plaintiff asserted by letter that the Supreme Court in *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979), had "severely undercut" *Doyle v. United States, supra.* That holding has been reviewed, and this Court does not find that the point here at issue has been blunted.

The *Doyle* court opted in favor of the "reduce by proportional fault" theory under its interpretation of *United States v. Reliable Transfer Co.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), from which it was found to be world wide experience "that the goal of 'just and equitable' allocation of damages" can be more nearly realized by a standard that allocates liability for damages according to comparative fault whenever possible." 421 U.S. at 411, 95 S.Ct. at 1715. *Doyle* applied this rule to reduce the plaintiff's recovery by the percentage of fault attributable to a settling defendant.

*Reliable Transfer,* however, did not in its terms or facts truly support *Doyle* because it did not involve the rights of settling and non-settling co-defendants, or the rights of a plaintiff vis-a-vis joint tortfeasors. *Reliable Transfer* rejected the ancient relatively rigid admiralty rule of divided damages in maritime collision cases in favor of a rule allocating liability in proportion to relative fault.

In comparison, *Edmonds* was an action under the Longshoremen's and Harbor Workers' Compensation Act (the Act) in which both the shipowner and the stevedore-employer of the plaintiff were negligent. Plaintiff, a longshoreman, recovered from his employer pursuant to the Act and then brought a negligence suit against the shipowner. A trial jury determined that plaintiff was responsible for 10% of the negligence which caused his injury, that the stevedore-employer was responsible (by reason of the conduct of a fellow employee) for 70%, and that the shipowner was accountable for 20%. The district court reduced the award against the shipowner by the 10% attributable to the plaintiff's own negligence, but refused to make further reduction as against the shipowner in proportion to the negligence attributable to the stevedore-employer. The Court of Appeals for the Fourth Circuit reversed, holding that 1972 amendments to the Act had altered the traditional admiralty rule by making the shipowner liable only in the ratio of its fault to the total fault. The appellate court then ruled that plaintiff could not recover against the shipowner for any portion of his damages which were attributable to the negligence of the stevedore-employer. *Edmonds v. Compagnie Generale Transatlantique,* 577 F.2d 1153 (4th Cir. 1978). *Cf. Shellman v. United States Lines, Inc.,* 528 F.2d 675 (9th Cir. 1975), *cert. denied,* 425 U.S. 936, 96 S.Ct. 1668, 48 L.Ed.2d 177 (1976).

The Supreme Court reversed the Fourth Circuit, allowing full recovery from the shipowner even though the result would require the shipowner to pay more than its share of the damages with no right of contribution since the employer was immune under the Act's limited liability provisions. The Supreme Court held that 1972 amend-

ments to the Act did not modify "the pre-existing rule that a longshoreman who is injured by the concurrent negligence of the stevedore and the ship may recover for the entire amount of his injuries from the ship." 443 U.S. at 266, 99 S.Ct. at 2760.

Mr. Justice White described the situation this way:

"The problem we face today, as was true of similar problems the Court has dealt with in the past, is complicated by the overlap of loss-allocating mechanisms that are guided by somewhat inconsistent principles. The liability of the ship to the longshoreman is determined by a combination of judge-made and statutory law and, in the present context, depends on a showing of negligence or some other culpability. The longshoreman-victim, however, and his stevedore-employer—also a tortfeasor in this case—are participants in a worker's compensation scheme that affords benefits to the longshoreman regardless of the employer's fault and provides that the stevedore's only liability for the longshoreman's injury is to the longshoreman in the amount specified in the statute. * * * We have more than once attempted to reconcile these systems." *Id.* at 261, 99 S.Ct. at 2757.

Earlier decisions had held that the compensation scheme was the exclusive remedy of the employee against his stevedore employer and, therefore, that a shipowner who might be liable to an injured longshoreman under the warranty of seaworthiness could not obtain contribution from a stevedore employer who might be concurrently negligent. The shipowner could nonetheless obtain from the employer a warranty of unworkmanlike service which might yield indemnity to the shipowner for its liability to the longshoreman. *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). In 1972, Congress amended the Act to eliminate the shipowner's liability to the longshoreman for unseaworthiness and the stevedore employer's liability to the shipowner for unworkmanlike service which resulted in injury to the longshoreman. As a result, the Fourth Circuit in *Edmonds* held that:

"The sentences [referring to the language of 33 U.S.C. 905(b)] are irreconcilable if read to mean that any negligence on the part of the ship will warrant recovery while any negligence on the part of the stevedore will defeat it. They may be harmonized only if read in apportioned terms." 577 F.2d at 1155, quoted in 443 U.S. at 263, 99 S.Ct. at 2758.

Mr. Justice White said that Congress could not have "intended to upset a 'long established and familiar principl[e]', of maritime law by proposing a proportionate fault rule." 443 U.S. at 263, 99 S.Ct. at 2758.

The *Edmonds* majority distinguished *Reliable Transfer* in a footnote as follows:

"* * * Normally, the chosen tortfeasor may seek contribution from another concurrent tortfeasor. If both are already before the court—for example, when the plaintiff himself is the concurrent tortfeasor or when the two tortfeasors are suing each other as in a collision case like *Reliable Transfer*—a separate contribution action is unnecessary, and damages are simply allocated accordingly. But the stevedore is not a party and cannot be made a party here, so the *Reliable Transfer* contribution shortcut is inapplicable. Contribution remedies the unjust enrichment of the concurrent tortfeasor, see Leflar, Contribution and Indemnity Between Tortfeasors, 81 U.Pa.L. Rev. 130, 136 (1932), and while it may sometimes limit the ultimate loss of the tortfeasor chosen by the plaintiff, it does not justify allocating more of the loss to the innocent employee, who was not unjustly enriched. See also H. Hart & A. Sacks, The Legal Process: Basic Problems in the Making and Application of Law 525 (tent. ed. 1958). Our prior cases recognize that. Even before *Reliable Transfer*, we apportioned damages between vessels that collided and sued one another. *Reliable Transfer* merely changed the apportionment from equal division to division on the basis of relative fault. But we did not upset the rule that the plaintiff may recover from *one* of the colliding vessels the damage concurrently

caused by the negligence of both. * *." 443 U.S. at 271–72, 99 S.Ct. at 2762.

This does not mean, however, that the *Doyle* approach is incorrect, only that *Reliable Transfer* is not itself dispositive.

In *Edmonds*, the Supreme Court referred to the common law of torts for the rule that a plaintiff may recover the full amount from any joint tortfeasor, regardless of the degree of negligence. *See* 443 U.S. at 260, n.8, 99 S.Ct. at 2757, citing Restatement (Second) of Torts, §§ 433A, 875 and 879 (1965 and 1979). Therefore, a reference to common law is appropriate to determine the effect of a settlement with one tortfeasor in a proportional damage case.

Two avenues may be followed:

1. This case could be classified as one in which the harm is divisible, so that each defendant is subject to liability for only the proportion of harm which he or she caused. The Restatement (Second) of Torts, § 881 (1979) provides: "If two or more persons, acting independently, tortiously cause distinct harms or a single harm for which there is a *reasonable basis for division* according to the contribution of each, each is subject to liability only for the portion of the total harm that he has himself caused." (Emphasis added). Here, Clyde did act independently (and a long time ago) so that a reasonable division of the harm may be accomplished.

2. In an ordinary (indivisible harm) joint tortfeasor situation, the effect of a release on the issue of contribution is subject to debate. The most recent Restatement declines to take a position on the matter. "The Institute takes no position on the effect of a release of one tortfeasor from liability for the harm or a covenant not to sue him for it, upon the right of other tortfeasors to contribution from him." Restatement § 886A, Caveat.

Comment m to § 886A lists three possibilities, each of which the Institute finds unsatisfactory:

1. The settling defendant is not immune from contribution to other tortfeasors.

2. Settlement extinguishes the right to contribution of other tortfeasors, but does not affect right of plaintiff to proceed against the nonsettlor. This is the approach urged by plaintiff here.

3. Settlement extinguishes the right of contribution and diminishes the claim of plaintiff by the share of fault attributable to the released tortfeasor.

The Restatement notes that the Uniform Law of Contribution Among Joint Tortfeasors has adopted each of these positions successively; the 1977 Act takes the last approach.

No absolute rule of maritime law is controlling here. The approach taken by the Restatement is not inconsistent with *Edmonds*. The majority there was troubled by the concept of a statute-created limitation on the employer's liability to frustrate full recovery by the employee. They did not challenge the merit of a statutory scheme under which an award of less than full damages is made in exchange for a guarantee that the employee will recover without the risk of having to prove his employer's fault. But the majority still seemed to wish to protect the employee's ability to obtain *full* damages. The dissenters (Blackmun, Marshall and Stevens) pointed out that this "full" recovery was available to the extent that the third-party's fault was proportionately extensive enough to confer liability bridging the gap. To allow more would be to sanction a windfall:

" * * * Under the Court's rule, the longshoreman is guaranteed statutory compensation without regard to fault *and* is given a risk-free chance to obtain full damages if the shipowner is found negligent in even the slightest degree. A more even-handed equity, in my view, would be for the longshoreman to recover damages for that portion of the injury for which the shipowner's negligence is responsible, and to recover the balance in statutory compensation, representing that portion of the injury for which the longshoreman is guaranteed an award regardless of fault." 443 U.S. at 280, 99

S.Ct. at 2767 (footnote omitted; emphasis in original).

The analogy to Kizer's case is apparent. The plaintiff himself contracted to limit Kiewit's liability in consideration of Kiewit's payment of $40,000 and Kiewit's promise to pay an additional $60,000 if plaintiff did not recover against Clyde. There is a recovery against Clyde which has been found to be one-third of the total damages. Judgment against Clyde for that one-third will be entered. Plaintiff accepted the risk that Clyde's liability would suffice to make him whole. But, Clyde did not prove to bear such whole liability.

This case does not involve the Longshoremen's Compensation Act and its "delicate balance" of rights and liabilities of stevedores and shipowners. 443 U.S. at 273, 99 S.Ct. at 2763. Instead, this is a product liability cause of action in a maritime context. The Court may look to common law principles and determine either that the harm is divisible or that a release reduces plaintiff's claim in proportion to the fault attributable to the released defendant. Under either aspect of the common law, Clyde Iron Works would pay only one-third of the damages. Such will be the order.