**MINPECO, S.A., Plaintiff,**

v.

**Nelson Bunker HUNT, William Herbert Hunt, International Metals Investment Co., Ltd., Naji Robert Nahas, Gilion Financial, Inc., Advicorp Advisory and Financial Corporation, S.A., and Mahmoud Fustok, Defendants.**

**No. 81 Civ. 7619 (MEL).**

United States District Court, S.D. New York.

Oct. 6, 1989.

---

son Bunker Hunt and William Herbert Hunt; Paul J. Curran, Stanley D. Robinson, Aaron Rubinstein, Laura A. Cecere, Phillip A. Geraci, William J. Schneier, of counsel; Gardere & Wynne, Dallas, Tex.; Robert E. Wolin, of counsel.

Doar, Devorkin & Rieck, New York City; John J. Rieck, Jr., of counsel; Thomas J. Curnes, Dallas, Tex., for defendant International Metals Inv. Co., Ltd.

LASKER, District Judge.

Nelson Bunker Hunt, William Herbert Hunt and International Metals Investment Co., Ltd. (collectively "defendants") move pursuant to Fed.R.Civ.P. 60(b)(3) for relief from the judgment filed September 1, 1988 and a new trial on the ground of alleged fraud, misrepresentation and misconduct by plaintiff Minpeco, S.A. ("Minpeco") in procuring the testimony of a trial witness pursuant to a confidential pre-trial settlement agreement with another defendant, the Chicago Board of Trade ("CBOT"). In August 1988 the defendants were found liable by a jury to Minpeco for violations of the Commodities Exchange Act, federal antitrust statutes, New York common law fraud and the Racketeer Influenced and Corrupt Organizations Act. Judgment was entered for Minpeco for more than $132 million. In an opinion of July 18, 1989 the previously filed motions by Nelson Bunker Hunt, William Herbert Hunt and Mahmoud Fustok for judgment notwithstanding the verdict or for a new trial were denied. 718 F.Supp. 168. For the reasons stated below this motion is also denied.

Cole, Corette & Abrutyn, Washington, D.C. for plaintiff Minpeco, S.A.; Mark A. Cymrot, Thomas O. Gorman, Pedro R. Pierluisi, James M. McNamara, Jr., of counsel; Grand & Ostrow, New York City, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants, Nel-

I.

By letter agreement dated October 29, 1987 counsel for Minpeco and counsel for CBOT executed a settlement agreement in this action.

Pursuant to Fed.R.Civ.P. 41(a)(2) the parties filed a stipulation of dismissal with prejudice and a proposed order and judgment with the court, which ensured that all

parties were notified of the settlement.[1] The parties informed the court generally of the terms of the settlement. No party objected and the court signed the order and judgment on December 30, 1987.

The agreement stated:

The CBOT will provide information and, if requested by Minpeco, no more than two witnesses at trial. Those two witnesses will be Robert E. Goldberg and Robert K. Wilmouth who have agreed to appear and testify in their individual capacities that are within their personal knowledge. Outlines of [counsel for Minpeco's] discussions with them are set forth in Exhibits A and B, which are attached hereto. [Minpeco] will not be required to subpoena either witness and any expense they incur by reason of their attendance at trial, including attorneys' fees, will be paid by the CBOT. [Minpeco] will give [CBOT] reasonable notice if and when it need[s] either witness at trial.[2]

In exchange plaintiff's claims against CBOT were dismissed with prejudice.

Goldberg, chairman of CBOT's Business Conduct Committee from 1979 to 1980, and Wilmouth, President and Chief Executive Officer of CBOT during the same period, were very familiar with CBOT's efforts to maintain an orderly silver futures market in the face of the large futures positions taken by the Hunts. Goldberg met with the Hunts on several occasions between October 1979 and January 1980 to ascertain their trading intentions and to seek their cooperation in preserving stability in the market. Both Goldberg and Wilmouth met with counsel for Minpeco during settlement discussions and made statements outlining their respective personal knowledge of CBOT's discussions with the Hunts during the fall and winter of 1979. These statements were included in the documents of

settlement between Minpeco and CBOT. Counsel for defendants discovered the substance of the agreement during post-trial settlement negotiations between counsel for Lamar Hunt and counsel for plaintiff classes in two related actions, *Gordon v. Hunt*, 81 Civ. 1318 (MEL) and *Korwek v. Hunt*, 84 Civ. 7394 (MEL).

Defendants argue that CBOT and Minpeco improperly agreed to arrange for Goldberg to testify at trial as to specific facts included in his signed statement appended to the settlement agreement, in exchange for CBOT's dismissal, and that Minpeco committed fraud and misconduct by failing to disclose the substance of the agreement to defendants prior to trial.

## II.

■ Fed.R.Civ.P. 60(b)(3) provides for relief from judgment on the basis of "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Defendants must show fraud or misrepresentation by clear and convincing evidence. *Fleming v. New York Univ.*, 865 F.2d 478, 484–85 (2d Cir.1989); *Sony Corp. v. S.W.I. Trading, Inc.*, 104 F.R.D. 535, 540 n. 4 (S.D.N.Y.1985).

■ Defendants first argument is that it was improper and illegal for Minpeco to agree to obtain specific trial testimony from Goldberg in exchange for valuable consideration—the dismissal of all claims against CBOT—received by CBOT and Goldberg. In support of their argument defendants cite cases that hold it improper to compensate witnesses for testifying. *See, e.g., People v. Belfor*, 197 Colo. 223, 591 P.2d 585 (1979) (suspending attorney from practice after he paid $1,500 to a witness to testify favorably); *In re*

---

1. Fed.R.Civ.P. 41(a)(2) states in relevant part: Except as provided in paragraph (1) [relating to dismissal prior to filing of defendant's answer or motion for summary judgment] of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.

2. Exhibits In Support Of Minpeco's Memorandum In Opposition To Defendant's Motion For Relief From The Judgment And A New Trial Based On Minpeco's Alleged Misconduct (July 10, 1989), Exhibit C (letter from Thomas O. Gorman, Esq., to John E. Angle, Esq., dated Oct. 29, 1987).

*O'Keefe,* 49 Mont. 369, 142 P. 638 (1914) (suspending attorney for agreeing to pay witnesses to testify truthfully at trial). However all of the cases cited by defendants involve compensation of the witness. In this case the settlement agreement was not with Goldberg, the witness, but with CBOT. Minpeco did not compensate Goldberg nor did it pay his expenses for testifying. Defendants assert that Goldberg's income was partially dependent on the public confidence placed in CBOT and thus his personal interest in exonerating CBOT was advanced by Minpeco's settlement agreement. This argument is unpersuasive.

Defendants do cite one case, *Goodrich v. Tenney,* 144 Ill. 422, 33 N.E. 44 (1893), in which a court held unenforceable a contract that compensated one party in exchange for that party's procurement of testimony by a third person. However, in *Goodrich* the contract also called for the compensation of the witness and the party to the agreement worked with the witness to devise the exact wording of the witness's false testimony. 33 N.E. at 47. There is no evidence in the case at hand that CBOT tried to control or in any way affect Goldberg's testimony, or that specific testimony was required, as in *Goodrich.* Nor was there evidence that CBOT could *require* Goldberg to testify. Defendants have not shown that CBOT or Goldberg agreed that Goldberg would testify in accordance with the outline of Goldberg's discussions with counsel for Minpeco. The cases cited by Minpeco are inapposite.

Finally, agreements involving a settling defendant's assistance in procuring the testimony of its employees have been approved in other cases. *See In re Beef Ind. Antitrust Litigation,* 607 F.2d 167, 180 (5th Cir.1979) (court approved settlement in which settling defendant agreed to assist plaintiffs by providing access to witnesses), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981); *In re Ampicillin Antitrust Litig.,* 82 F.R.D. 652, 653 (D.D.C.1979) (approving settlement in which settling defendant agreed to help obtain deposition and trial testimony of its employees and former employees). Defendants' attempt to distinguish these cases on the ground that they did not involve agreements to provide specific testimony is unpersuasive because there was no agreement to provide specific testimony in the case at hand. In sum, there was nothing improper in CBOT's agreement to assist Minpeco by arranging for Goldberg and Wilmouth to testify at trial if Minpeco so requested.

## III.

■ Defendants next argue that the confidentiality of the agreement and Minpeco's failure to disclose its contents to defendants constitute fraud and misconduct because defendants' lack of knowledge of the agreement permitted Minpeco's presentation of Goldberg as a neutral and impartial witness to go unchallenged.

However, Minpeco fully complied with Fed.R.Civ.P. 41(a), which governs voluntary dismissals of actions and requires only that the settling parties file a notice of dismissal. Rule 41(a) does not require that the parties file the actual settlement agreement. Defendants never attempted to inquire before trial about the terms of the agreement. On the other hand, Goldberg did testify on cross-examination that he was appearing voluntarily because he had agreed to do so and that he had met with Minpeco's counsel on six occasions prior to trial.[3] These answers clearly implied that there was an arrangement or agreement between the witness and Minpeco regarding his testimony. Defendants were free to probe the matter by inquiring further on cross-examination but failed to do so.

In support of their argument, defendants cite cases in which courts have condemned so-called "Mary Carter" agreements, that is, a settlement agreement in which the plaintiff and one of the defendants secretly agree that in exchange for dismissal the settling defendant will receive a portion of the judgment and will remain a party to the case. *See Quad/Graphics, Inc. v. Fass,*

---

**3.** Trial Transcript ("T.") at 4680.

724 F.2d 1230, 1232 (7th Cir.1983). Such an agreement "creates the most unfair prejudice to the non-agreeing defendant and his right to a fair trial." *Hoops v. Watermelon City Trucking, Inc.*, 846 F.2d 637, 640 (10th Cir.1988). Under such circumstances the witnesses for the settling defendant have an obvious incentive to assist the plaintiff through their testimony.

Defendants assert that the agreement between CBOT and Minpeco is similar to but even more prejudicial than a Mary Carter agreement because specific testimony was promised as a condition of settlement. For example, defendants cite *Leger v. Drilling Well Control, Inc.*, 69 F.R.D. 358 (W.D.La.1976), *aff'd*, 592 F.2d 1246 (5th Cir.1979), in which the court ordered a new trial after defendants discovered a settlement agreement by which the settling defendants would receive 50 percent of plaintiff's judgment in exchange for providing the testimony of their employees.

*Leger* is distinguishable from the case at hand, as are the Mary Carter cases cited by defendants. The *Leger* court found that the settling defendants' interest in the case was not terminated with settlement because they stood to recover half of the judgment, a fact that should have been revealed to the jury before it assessed the credibility of witnesses employed by the settling defendants. 69 F.R.D. at 361. In the case at hand CBOT's interest in the case ended when it was dismissed from the case *prior to settlement*; it had no stake in the judgment recovered by Minpeco and Goldberg *never* had any stake at all. For these reasons the CBOT agreement is not a Mary Carter agreement. Minpeco was under no legal obligation voluntarily to disclose the contents of the settlement agreement about which defendants never inquired. The allegations of fraud and misconduct lack merit.

Finally, defendants argue that Goldberg's testimony was central to the outcome of the trial because he was the most important witness to challenge the Hunts' credibility. This is a gross mischaracterization of the record. Goldberg was only one of several witnesses to testify to the effect that the Hunts mislead regulators of the silver market, an argument that was itself only one among many advanced by Minpeco. Goldberg testified for two hours during a trial that spanned six months. His testimony was not even remotely central to the outcome of the trial.

Defendants have not come anywhere near establishing clear and convincing evidence of fraud or misrepresentation. Accordingly, the motion is denied.

It is so ordered.