# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 15, 2010

No. 09-30414

Lyle W. Cayce
Clerk

ST. PAUL'S EVANGELICAL LUTHERAN CHURCH,

Plaintiff–Appellant

v.

QUICK RESPONSE RESTORATION, INC.,

Defendant–Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:06-CV-6486

Before JONES, Chief Judge, and KING and HAYNES, Circuit Judges.

PER CURIAM:[*]

The appellant, St. Paul's Evangelical Lutheran Church, asserts that Quick Response, which the church hired to stabilize its buildings following Hurricane Katrina, performed unnecessary services and overcharged it. Quick Response, in turn, seeks payment for the work that it performed under the parties' contract. Below, the jury found for Quick Response, and the church now appeals the district court's instructions to the jury, the sufficiency of the evidence underlying its verdict, and the district court's awards of interest and attorney's

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-30414

fees. Having considered the briefs, oral argument, and pertinent parts of the record, we conclude that the district court did not abuse its discretion and that the evidence is plainly sufficient, and we affirm.

St. Paul's Evangelical Lutheran Church is among New Orleans's oldest houses of worship. The church owns a parcel of land on which sit its church building and a Fellowship Center. Both were severely damaged in Hurricane Katrina.

On October 12, the church's pastor, Jones Ertl, signed an agreement with Quick Response, a New York firm specializing in water damage restoration. This agreement, titled "Work Authorization and Direct Payment Request," provided that Quick Response would "proceed with its recommended procedures to preserve, protect, and secure from further damage the property." It also stated that Quick Response "shall bill all charges and/or costs direct to the Insurance Company and, as a courtesy only, a copy of these invoices shall be mailed to [the church]" and that, ultimately, the church would be liable for "any and all charges for services not reimbursed by an insurance carrier." Finally, the agreement stated that, in the event that Quick Response initiated legal proceedings to enforce it, the company would be "entitled to recover the costs of collection including reasonable attorneys' fees, costs, and disbursements."

St. Paul's also retained the services of Acclaim Adjustment, Inc., to represent it as a public adjuster. Acclaim's employee John Andres handled the project.

Over the course of the following three weeks, Quick Response's workers installed temporary roofs, boarded up broken windows, gutted the buildings of destroyed materials and debris, and dried their interiors. The job was complete on November 1, and on November 15, Pastor Ertl signed an "Acceptance Agreement" stating that "Quick Response satisfactorily performed all work and that St. Paul's unconditionally accepted such work." A week later, Quick

No. 09-30414

Response sent an invoice, in the amount of $375,001.08, to Andres, for the work performed on both buildings. *Id.* Andres, in turn, submitted the invoice amount to St. Paul's insurers, and the insurers made payments to Quick Response that ultimately totaled $235,654.06, leaving a $139,347.02 deficiency.

St. Paul's filed suit against its three insurers and Quick Response. The church settled with the insurers and is represented by an insurer in defending Quick Response's counterclaim for the balance due on its recovery work. The trial itself was largely a battle of the experts, with each side presenting testimony as to the nature, necessity, and quality of the work performed by Quick Response, as well as the reasonableness of the amount that it charged for its services.

Ultimately, the jury found that Quick Response was due an additional "$139,347.02 plus the cost of collection, including reasonable attorneys' fees, cost (sic), and disbursements." The district court awarded interest from the date of Quick Response's demand letter, contractual attorney's fees in the sum of $102,188.61, and expert witness fees, but denied reimbursement for collection fees.

On appeal, St. Paul's raises three issues: the district court erred when it instructed the jury on agency and estoppel; the jury's award of damages was not adequately supported by the evidence; and the awards of interest and fees were excessive and in violation of Louisiana law.

No. 09-30414

## 1. Jury Instructions

St. Paul's argues that the district court erred in instructing the jury, at Quick Response's request, on agency and estoppel, because neither issue had been pled by Quick Response or raised in the pretrial order.[1]

A pretrial order supersedes all pleadings and government the issues and evidence to be presented at trial. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998). At the same time, "if a claim or issue is omitted from the order, it is waived, even if it appeared in the complaint." *Id.*

### A. Agency

The issue of agency was mentioned prominently in the pretrial order. The order contained a stipulation that St. Paul's had retained Acclaim, and by extension Andres, "to represent it as a Public Adjuster."

The issue was also addressed, at some length, by both parties during trial. Both presented evidence and elicited testimony on Andres's role in the water restoration project. Pastor Ertl, for example, testified that he expected Andres to evaluate the necessity of the work, at the outset and during its performance, and, ultimately, its quality. Quick Response's owner, Vince Laurenzo, testified that Andres, who was on the jobsite most days, directed Quick Response at every step of the way. This, he said, was standard practice when a public adjuster has been hired. Agency, then, was clearly at issue throughout the litigation.

Further, the instruction itself was an accurate recitation of Louisiana law. *See AAA Tire & Export, Inc. v. Big Chief Truck Lines, Inc.*, 385 So.2d 426, 429 (La. App. 1st Cir. 1980); *Houston Exploration Co. v. Halliburton Energy Services,*

---

[1] It may be doubted, in light of the contract documents and work acceptance signed by Paster Ertl, whether agency was a relevant issue. But in any event, a district court's instructions to the jury are reviewed for abuse of discretion, and this court "will reverse a judgment only if the charge as a whole creates a substantial doubt as to whether the jury has been properly guided in its deliberations." *C.P. Interests, Inc. v. California Pools, Inc.*, 238 F.3d 690, 700 (5th Cir. 2001).

No. 09-30414

*Inc.,* 359 F.3d 777, 780 (5th Cir. 2004). That the jury was instructed on this issue, as subsidiary to the parties' claims, was no abuse of discretion.

### B. Estoppel

The pretrial order clearly identified estoppel as a contested issue of law:

> Whether Plaintiff should be barred or estopped from challenging the reasonableness of any work or services performed by Quick Response or charges incurred by reason of Plaintiff's unconditional acceptance of Quick Response's work for Plaintiff on November 15, 2005 and the partial payments made to date by St. Paul's.

Whether this defense was pled with precision is irrelevant.

In addition, St. Paul's challenges the content of the estoppel instruction, arguing that estoppels are not favored under Louisiana law. *See, e.g., Twillie v. H. B. Zachry Co.*, 380 So.2d 747, 750 (La. App. 1980) (citing cases); *Westenberger v. State Through Dept. of Ed.*, 333 So.2d 264, 271 (La. App. 1976). This is true only to the extent that the party asserting estoppel has the burden of proving its elements and that estoppel, as defined in Louisiana law, fairly lies. *Id.*; *Twillie*, 380 So.2d at 750. It is dispositive, then, that the instruction to the jury fairly tracked Louisiana law. *See Babin v. Montegut Ins. Agency, Inc.*, 271 So.2d 642, 645 (La. App. 1973); *Morgan v. Cedar Grove Ice Co.*, 215 La. 741, 41 So.2d 521, 523 (1949).

Both agency and estoppel were present in the pretrial order, and the district court's instructions to the jury on these issues correctly described applicable law. Accordingly, the district court did not abuse its discretion in so instructing the jury.

### 2. Sufficiency of the Evidence

St. Paul's next argues that the jury's verdict is unsupported by the evidence presented at trial due to the strong testimony of its own expert witness. "[A] party who wishes to appeal on grounds of insufficient evidence must make a Rule 50(b) motion for judgment as a matter of law after the jury's verdict."

No. 09-30414

*Downey v. Strain*, 510 F.3d 534, 543–44 (5th Cir. 2007) (citing *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 126 S. Ct. 980 (2006)). St. Paul's did not file a Rule 50(b) motion. Therefore, "there is no basis for this court to review [its] challenge to the sufficiency of the evidence." *Id.*

### 3. Interest and Attorney's Fees

Finally, St. Paul's challenges the district court's awards of interest and attorney's fees as excessive. We find no error.

### *A. Interest*

St. Paul's argues that a plain reading of the jury interrogatory and the jury's response to it illustrates that the jury awarded to Quick Response only the balance it was due on the date of the verdict, a sum which necessarily included prejudgment interest. This is wrong. The parties agreed prior to trial that the jury would not determine interest, and the principal deficiency that they stipulated, and which the jury adopted to the penny, did not include interest.

St. Paul's also erroneously disputes the district court's calculation of interest from the date of Quick Response's demand letter as contrary to law. Louisiana substantive law presumes that interest will be awarded on judgments, LA. CIV. CODE art. 2000, and "a debt or claim for the payment of money or damages under a contract is ascertainable and becomes due on the date an active violation occurred or the obligor was put in default, which can be earlier but never later than judicial demand, and legal interest runs from that date." *Mini Togs Products, Inc. v. Wallace*, 513 So.2d 867, 873 (1987) (citing *Alexander v. Burroughs Corp.*, 359 So.2d 607, 613–14 (La.1978)).

The district court appropriately set the date of the demand letter as the day on which interest on the judgment began to run.

St. Paul's also argues, contrary to Louisiana law, that the district court's method of calculating prejudgment interest was improper in that it considered the amount due at the time of the demand letter and then applied subsequent

No. 09-30414

payments to the accrued interest, rather than to the principal. *See* LA. CIV. CODE art. 1866 ("A payment made on principal and interest must be imputed first to the interest."). The district court, in calculating interest, began with the principal deficiency at the time of Quick Response's demand letter and then applied St. Paul's payments at the times that they were made, all as required by Louisiana law.

## B. Attorney's Fees

St. Paul's accuses the district court of having "rubber-stamped" Quick Response's request for $102,188.61 in fees, which it argues was unreasonable given the complexity of the case and the work performed.

"In diversity cases state law governs the award of attorney's fees." *Texas Commerce Bank Nat. Ass'n v. Capital Bancshares, Inc.*, 907 F.2d 1571, 1575 (5th Cir. 1990). Under Louisiana law, ten factors are relevant to determining the reasonableness of fee awards:

> (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge.

*Rivet v. State, Dept. of Transp. & Dev.*, 680 So.2d 1154, 1161 (La. 1996).

Nearly all ten factors stand in support of the fee award. Quick Response prevailed completely. Its attorneys were fully responsible for the case, from its answer and counterclaim through the verdict. The litigation involved a substantial amount of money for a business of Quick Response's size. The case, at its outset, involved several well-represented insurers. Trial was continued five times, and the case was pending for two-and-a-half years, from the initial complaint through to the jury verdict. The lengthy docket below indicates that this was litigated as if it were more than a routine contract dispute. Finally, the

7

attorneys' diligence and skill were specifically praised by the district court and are evident in the trial record.

The billing records submitted to the district court were extremely detailed, and the attorneys charged their customary rates, ranging from $150 per hour for an associate attorney to $225 per hour for a litigator with 25 years of experience in commercial and construction law.

Given the record before the district court, the factors employed by Louisiana law, and the great discretion afforded the district court under Louisiana and federal law, we cannot conclude that the factual determinations underlying the fee award were clearly erroneous or that the award itself, though high relative to the judgment, was an abuse of discretion.

For the reasons discussed above, the jury verdict and awards of interest and attorney's fees are **AFFIRMED.**