# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 22, 2013

No. 12-30386
Summary Calendar

Lyle W. Cayce
Clerk

DON RANDAL JACKSON,

Plaintiff–Appellee /
Cross–Appellant

v.

STRANCO, INCORPORATED,

Defendant–Appellant /
Cross–Appellee

Appeals from the United States District Court
for the Eastern District of Louisiana
U.S.D.C. No. 2:08-CV-4293

Before JONES, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Stranco, Incorporated, appeals from an adverse jury verdict and judgment entered in favor of Don Randal Jackson. Jackson cross-appeals the district court's nonspecific award of "legal interest." We AFFIRM the district court's judgment on the jury's verdict and damage award, and VACATE and REMAND

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30386

for further consideration the portion of the court's judgment awarding "legal interest."

A few weeks after Hurricane Katrina struck the Gulf Coast, Jackson assembled a small work crew and traveled from Florida to St. Tammany Parish, Louisiana, to help clear debris from storm-ravaged areas. The Government hired Omni Pinnacle, LLC, ("Omni") to organize debris-clearing efforts. Omni subcontracted with Stranco, who in turn subcontracted with several nonparties to this suit. Jackson originally contracted with two of the nonparties, but he soon contracted directly with Stranco to work in various places, including the town of Abita Springs.[1] Jackson's crew grew to a few dozen "subcontractors." He claims his crew had exclusive responsibility for Abita Springs.

The contractors received payment for each cubic yard of cleared debris. Independent monitors issued "truck tickets" to Jackson and his subcontractors as they unloaded debris at the city dump, indicating the number of cubic yards collected in each load. Jackson collected the truck tickets at the end of each day and passed them along to Stranco. Stranco then billed Omni, who billed the Government. Jackson paid his subcontractors various rates per cubic yard, depending on whether the individual used Jackson's equipment and other factors. At trial, an independent auditor testified that his records showed that roughly 61,182 cubic yards of debris were removed from Abita Springs from October 2005 through February 2006 (the "Kyle Report"). Stranco produced an invoice that showed Stranco had billed Omni for 51,532 cubic yards through February 26, 2006.[2]

---

[1] The parties stipulated at trial that Jackson had a contract with Stranco, but the record is not clear whether that stipulation extended to an agreement that Jackson's contract began in October 2005. Stranco argued that the contract began no earlier than November 2005. Regardless, the jury appropriately settled on an October start-date.

[2] Stranco argues that the district court erred in admitting this document because it listed billings to other contractors. Stranco fails to show that it suffered prejudice. The document went to the jury in redacted form, and Stranco provides no real explanation for how the document improperly influenced the jury's damage calculation.

No. 12-30386

Jackson's relationship with Stranco eventually unraveled, and he quit at the end of February 2006.  Jackson claimed that Stranco had not paid him as agreed, thereby making him unable to pay some of his subcontractors.  Jackson later filed this lawsuit to collect the allegedly unpaid amounts.[3]  Stranco counterclaimed.  It asserted that it had overpaid Jackson, and that Jackson had pocketed amounts due to his subcontractors.  Stranco paid several of Jackson's subcontractors $5 per cubic yard in exchange for a release and assignment of any claims they might have against Jackson.

The case went to trial.  In short, "the evidence was profuse, somewhat fragmentary, and conflicting in critical areas." *Conway v. Chem. Leaman Tank Lines, Inc.*, 610 F.2d 360, 367 (5th Cir. 1980).  Given the passage of time, the exigencies of working in a disaster zone, and subsequent alleged events in Jackson's life, he lacked "hard" evidence documenting many of the oral agreements and payments central to the parties' dispute.  He relied primarily on his memory and Stranco's evidence, including spreadsheets and other documents.  The parties continued to sift through evidence throughout trial.  Their attorneys stipulated to a number of matters in an effort to narrow and clarify issues for the jury, and they participated in numerous side-bar conferences with the district judge.  The jury ultimately had to decide three issues: (1) whether the Jackson/Stranco agreement provided for $6 or $7 per cubic yard; (2) whether Stranco owed Jackson and, if so, how much; and (3) whether Jackson owed Stranco and, if so, how much.

The jury ruled in Jackson's favor and concluded that Stranco owed him $161,381.43—a figure that reflected a "netting" of sums paid to Jackson and subcontractors against what Stranco owed Jackson.  The district court

---

[3] Stranco contends that this case fails to meet the amount-in-controversy requirement. Jackson's and Stranco's pleadings, however, both clearly establish that their dispute concerned several hundred thousand dollars in alleged damages at the time the action was filed.

3

accordingly entered judgment, and later amended that judgment to award Jackson "legal interest." Stranco moved for judgment as a matter of law and for a new trial. The district court concluded that adequate evidence supported the verdict and denied both motions.

On appeal, Stranco challenges the district court's denial of its motions for judgment as a matter of law and for a new trial. In Stranco's view, the jury disregarded the "only empirical data and evidence at trial" and instead improperly accepted as true Jackson's unsubstantiated claims and speculation. The jury compounded that mistake, Stranco argues, by crediting Jackson for work done by other contractors who cleared debris in Abita Springs, and by making other errors attributable to "confusion" over several aspects of the case, including misunderstanding the import of the parties' stipulations.

"'A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict.'" *Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000) (omission in original) (citation omitted). We usually review such rulings *de novo*. *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1322-23 (5th Cir. 1994). However, we review only for plain error where, as here, a party fails to raise in its pre-verdict motion the same issues raised in its post-verdict motion.[4] *See Roman v. W. Mfg., Inc.*, 691 F.3d 686, 699-700 (5th Cir. 2012) (citing, *inter alia*, *Bay Colony Ltd. v. Trendmaker, Inc.*, 121 F.3d 998, 1003-04 (5th Cir. 1997)). In such cases, we must "uphold the jury's resolutions if we discern '*any* evidence' in support." 691 F.3d at 700 (quoting *United States ex rel. Wallace v. Flintco, Inc.*, 143 F.3d 955, 964 (5th Cir. 1998)).

---

[4] Stranco moved for a directed verdict at the close of Plaintiff's evidence by stating only: "I think I know how you're going to rule on this before I make the motion, but in the break I should have made my motion for a directed verdict." The district judge replied, "I wondered," and denied the motion.

No. 12-30386

We review rulings on motions for new trials for abuse of discretion. *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 264 (5th Cir. 1998). In practice, "our review is more narrow when a new trial is denied than when one is granted." *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998). A "denial will be affirmed unless, on appeal, the party that was the movant in district court makes a 'clear showing' of '*an absolute absence of evidence to support the jury's verdict*[.]'" *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998) (citation omitted). A jury's damage award will stand unless clearly erroneous. *Myers v. Griffin-Alexander Drilling Co.*, 910 F.2d 1252, 1255 (5th Cir. 1990).

Stranco's arguments fall short of these stringent standards. The jury confronted a melange of conflicting and confusing documents, numbers, and testimony. "[I]n constructing its own view of what most probably happened, this jury could have reached a number of different conclusions, all of which would have sufficient support in th[e] evidence to be upheld." *Conway*, 610 F.2d at 367.

The jury's findings nonetheless have a simple explanation: the jury believed Jackson and resolved disputed fact issues in his favor. The jury apparently accepted testimony showing that Jackson had exclusive responsibility for Abita Springs and, thus, reasoned that his crews collected the full 61,182 cubic yards of debris logged in the Kyle Report. Taking that amount, at $7 per cubic yard, minus the three credit amounts Jackson agreed were due to Stranco, results in the damage award arrived at by the jury.[5]

---

[5] More accurately, the jury found—in line with Jackson's testimony—that Stranco owed Jackson $7 per cubic yard for debris collected between October and December 2005, and $6 per cubic yard for January and February 2006. Jackson accounted for this by testifying that, if the jury used $7 per cubic yard, he would owe Stranco a credit for $12,816.18. He also conceded that Stranco had already paid him $145,482.27, and that he owed his subcontractors $108,594.12. Multiplying 61,182 cubic yards by $7 results in $428,274. Subtracting Jackson's three credits from that equals $161,381.43—the damage award.

No. 12-30386

Stranco resists this conclusion primarily by arguing that Jackson lacked credibility and construing conflicting evidence in *its* favor. We decline this invitation to substitute our own views for that of the jury. *See Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008)

Stranco also asserts that the jury erred by rejecting its calculation of the amount Jackson owed his subcontractors. At trial, the parties extensively discussed Defense Exhibit 30 ("Exhibit 30"), a Stranco spreadsheet listing some of Jackson's subcontractors and the amount Jackson allegedly failed to pay each of them. Stranco paid the subcontractors the amounts listed for each as provided in Exhibit 30, totaling $154,592.82, which was calculated assuming that Jackson had agreed to pay each one a rate of $5 per cubic yard. When Jackson reviewed Exhibit 30 at trial, however, he refuted Stranco's calculations by contending that some of the listed subcontractors had (1) already been paid by him; (2) agreed to a rate lower than $5 per cubic yard; or (3) claimed amounts that were never due to them in the first place. After accounting for these factors, Jackson agreed that he owed various subcontractors a total of $108,594.12, and the jury's damage award calculation incorporates that amount.

Stranco objects that Jackson presented no objective, tangible evidence to support that and other conclusions. As to Exhibit 30, Jackson could have—and did—testify from his personal knowledge as to whether particular contractors remained unpaid and whether they worked for $5 per cubic yard or some other amount. Indeed, a sizable part of the difference between Stranco's proffered amount and Jackson's comes from Jackson's excluding an individual allegedly owed over $25,000, but who Jackson said worked for only three days.[6]

---

[6] Stranco claims this individual was one of Jackson's business partners. Jackson testified that the partnership never materialized and that the putative partner worked for only a few days. The district court concluded that Stranco provided "no evidence" on this issue and that Jackson had standing to bring this case. We leave those determinations undisturbed.

No. 12-30386

Jackson claimed that much of his documentation was lost during a falling-out with a woman who helped run his business. The district court, at Stranco's insistence, gave the jury an "adverse presumption" instruction that essentially permitted the jury to use Jackson's lack of evidence in Stranco's favor. That the jury apparently accepted Jackson's explanations and refused to draw the presumptions Stranco preferred does not mean that the jury rendered its verdict against the evidence or miscalculated its damage award.

"On this record, the jury's conclusions are at least as likely to be true as any others, are not at variance with any established physical laws, and are not against any great evidentiary weight." *Conway*, 610 F.2d at 367. Nor can we say that the damage award is clearly erroneous. The parties presented numerous genuinely disputed issues of material fact, and the jury "sorted it out," albeit overwhelmingly in Jackson's favor. It appropriately did so under the "any evidence" standard of review applicable here.

Accordingly, we AFFIRM the district court's judgment in Jackson's favor along with the jury's calculated damage award. We VACATE the district court's award of "legal interest" and REMAND for clarification of the amounts of pre- and post-judgment interest owed by Stranco to Jackson.[7]

---

[7] We vacate the district court's interest award because there appears to be a factual dispute as to when Jackson put Stranco on notice of his claims. Resolution of that dispute controls the award of pre-judgment interest. *See, e.g.*, *St. Paul's Evangelical Lutheran Church v. Quick Response Restoration, Inc.*, 381 F. App'x 408, 412 (5th Cir. 2010) (unpublished) ("Louisiana substantive law presumes that interest will be awarded on judgments, and 'a debt or claim for the payment of money or damages under a contract is ascertainable and becomes due on the date an active violation occurred or the obligor was put in default, which can be earlier but never later than judicial demand, and legal interest runs from that date.'" (citations omitted)).